# Commonwealth, for use, Appellant, *v.* Schollenberger.

[Marked to be reported.]

### *Constitutional law—Interstate commerce.*

A nonresident who comes into this state to embark in business, is in the same situation as that of a resident, and the business done at his store is state, and not interstate commerce.

### *Oleomargarine—Agent of nonresident dealer—Act of 1885.*

A nonresident manufacturer of oleomargarine who sells his product in this state at a store, managed by an agent with an internal revenue license, is not engaged in interstate commerce, and his agent is amenable to the penalties of the oleomargarine act of May 21, 1885, P. L. 22.

### *Definition of original package.*

An "original package" is such form and size of package as is used by producers or shippers for the purpose of securing both convenience in handling, and security in transportation of merchandise between dealers in the ordinary course of actual commerce.

### *Unlawful retail trade—Original package.*

Where a mode of putting up a package is not adapted to meet the requirements of actual interstate commerce, but the requirements of an unlawful intrastate retail trade, the dealer will not be protected on the ground that he is selling an original package.

### *Case stated—Inference—Original package.*

A case stated averred in substance that defendant was an agent of a nonresident manufacturer of oleomargarine, and that he sold at his store in this state a package of oleomargarine weighing eighty pounds, made and stamped and branded in Rhode Island, for use as an article of food. *Held,* that the statement did not amount to an assertion that the sales were made in the " original package " of commerce.

### *Cases considered—Leisey v. Hardin and Com. v. Zelt.*

Leisey v. Hardin, 135 U. S. 100, held that goods in the original packages with seals unbroken, and no sales having been made therefrom were not liable to seizure under the police laws of the state into which they had been brought. Beyond this it does not go. Com. v. Zelt, 138 Pa. 615, discussed and applied.

Argued April 3, 1893. Appeal, No. 308, Jan. T., 1893, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1891, No. 665, in favor of defendant George Schollenberger, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Case stated to determine validity of sale of oleomargarine.

The case stated was as follows:

" That the defendant is a resident and citizen of the state of Pennsylvania.

" That defendant is engaged in business at 219 Callowhill street, in the city of Philadelphia, Pa., as the agent of the Oak-dale Manufacturing Company, whose principal office and place of business is in the city of Providence and state of Rhode Island; and was acting as such agent from the 1st day of June, 1891, and on the 30th day of November, 1891.

" That the said defendant, on the 21st day of July, 1891, paid to the collector of internal revenue of the first district of Pennsylvania the sum of four hundred and eighty dollars, as and for a special tax upon the business as agent for the Oak-dale Manufacturing Company in oleomargarine, and obtained from said collector a writing in the words following: [Here follows internal revenue store license to defendant as agent.]

" That on Nov. 30, 1891, in the city of Philadelphia, at his said place of business as aforesaid, said defendant, acting as agent for the said Oakdale Manufacturing Company, sold and delivered to one John H. Berry, carrying on the business of a coffee house, at 606 Lombard street, in the city of Philadelphia, Pa., a package containing eighty pounds of oleomargarine for the sum of $12.40, which said sum of $12.40 was paid to the defendant as agent of the Oakdale Manufacturing Company on the said 30th day of November, 1891; which said package of oleomargarine was manufactured in the state of Rhode Island and shipped to their agent, the defendant, the said George Schollenberger, who sold and delivered the said package, unbroken, to the said John H. Berry, and which package was marked, branded and stamped in the manner prescribed by the commissioner of internal revenue with the approval of the secretary of the treasury.

" If, upon this statement of facts, the court is of the opinion that the defendant is liable for the penalty imposed by the act of assembly, entitled, ' An act for the protection of the public health and to prevent the adulteration of dairy products and fraud in the sale thereof,' approved May 21, 1885, then judgment to be entered in favor of the commonwealth and against the defendant in the sum of $100 and costs of this suit; but if

the court be of the opinion that for any reason the defendant is not so liable, then judgment be entered for the defendant.

" It is hereby agreed by counsel for plaintiff and defendant in the above case, that for the purposes of this case, the word ' oleomargarine,' when used in the case stated, is intended to mean ' an article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream from the same ; ' and manufactured ' out of any oleaginous substance or any compound of the same, other than that produced from unadulterated milk or cream from the same.'

" It is further agreed that the said package was sold as an article of food within the words of the act of May 21, 1885."

The court entered judgment for defendant on the case stated, in an opinion by REED, J., 2 Dist. R. 244.   Plaintiff appealed.

*Error assigned* was entry of judgment as above.

*Luther S. Kauffman, Charles F. Warwick* and *Wayne Mac-Veagh* with him, for appellant.—The constitutionality of the act of May 21, 1885, P. L. 22, has been affirmed by both the Supreme Court of Pennsylvania in Powell v. Comth., 114 Pa. 292, and by the Supreme Court of the United States in the same case : 8 S. C. R. 992 ; 127 U. S. 678.

The police power of the state is now as full and complete as it was when Com. v. Powell was decided.   A proper exercise of the police power of the state (as the act of May 21, 1885, is thus decided to be), is not an unlawful interference with interstate commerce.   Leisey v. Hardin, 135 U. S. 641, does not reverse Powell v. Com., above.

That the legislature had the right to declare oleomargarine " not merchantable," is clearly decided by the Supreme Court of the United States in Powell v. Com., 127 U. S. 678.

The Supreme Court of Pennsylvania in Com. v. Gardner, 133 Pa. 284, clearly states what interstate commerce is, and defines the rights of citizens thereunder.

That the act of May 21, 1885, is excepted from the general scope of the decision in Leisey v. Hardin, is plainly indicated by the Supreme Court of Pennsylvania in the case of Com. v. Zelt, 138 Pa. 628.

The constitutionality of the act of May 21, 1885, that it is

a proper exercise of the police power of the state, and that it is not an interference with or regulation of interstate commerce, is clearly decided in Titusville v. Brennan, 22 Atl. R. 893; Beer Co. v. Massachusetts, 97 U. S. 25; McAllister v. State, 20 Atl. R. 143; Pierce v. State, 63 Md. 596; Dent v. West Virginia, 129 U. S. 114.

The passage by congress of the act of August 2, 1886, does not limit or lessen the police power of the state in relation to oleomargarine, nor does it authorize the issue of so called license—special tax stamps—conferring authority upon dealers to sell oleomargarine in opposition to the laws of the several states regulating or prohibiting the sale of such product.

But even if the decision of Leisey v. Hardin applies to this case, that decision has been practically reversed by the later decision of the Supreme Court of the United States in the case of O'Neil v. State, 12 S. C. R. 694.

*A. B. Roney*, for appellee.—The case of Leisey v. Hardin, 135 U. S. 100, is decisive on the law of this case, namely : Can the state of Pennsylvania prohibit the sale of an article manufactured in and imported from another state, and recognized by Congress to be an article of interstate commerce, while the same is still in the hands of the importer in the original package? Gibbons v. Ogden, 9 Wheat. 204.

Interstate commerce is such commerce as the nation at large shall determine to be interstate: Gibbons v. Ogden, 9 Wheat. 189; Welton v. Mo., 91 U. S. 275; Mobile Co. v. Kimball, 102 U. S. 697; Robbins v. Shelby Co., 150 U. S. 489; Com. v. Gardner, 133 Pa. 284; Bowman v. Chicago etc. Ry. Co., 125 U. S. 493; Thurlow v. Mass., 5 How. 504.

It is therefore in the power of Congress exclusively to regulate this commerce : Above cited cases and Brown v. Maryland, 12 Wheat. 441; N. Y. v. Miln, 11 Pet. 157; License Cases, 5 How. 599; Passenger Cases, 7 How. 283; Bowman v. Chicago, 125 U. S. 478; Welton v. Mo., 91 U. S. 275; Mobile v. Kimball, 102 U. S. 691; Bartemeyer v. Iowa, 18 Wal. 129; Beer Co. v. Mass., 97 U. S. 25; Mugler v. Kansas, 123 U. S. 623; Powell v. Penna., 127 U. S. 678.

What will amount to a regulation of interstate commerce must depend upon the effect of the particular law of the state.

If it merely indirectly and remotely affects commerce the action of the state is valid if exercised under a valid state power: Willson v. B. B. Co., 2 Pet. 245; Mobile v. Kimball, 102 U. S. 691; Withers v. Buckley, 20 How. 84; Gilman v. Phila., 3 Wal. 713; Pound v. Turck, 95 U. S. 459; Cooley v. Port Wardens, 12 How. 299; Turner v. Md., 107 U. S. 38; Morgan Steamship Co. v. Board of Health, 118 U. S. 455; Manchester v. Com., 139 U. S. 240; Dent v. West Va., 129 U. S. 114.

It is, on the contrary, a regulation of commerce and void: (*a*) If the state law acts in an unreasonable manner or unnecessarily interferes with commerce: Foster v. Master, 94 U. S. 246; R. R. v. Ill., 118 U. S. 557; W. U. Tel. Co. v. Pendleton, 122 U. S. 347; R. R. v. Husen, 95 U. S. 465; Minn. v. Barber, 136 U. S. 313; Brimmer v. Rebman, 138 U. S. 78; Voight v. Wright, 141 U. S. 62.   (*b*) Or is a taxation of that commerce: Gloucester Ferry Co. v. Penna., 114 U. S. 196; Robbins v. Shelby Co., 120 U. S. 489; Asher v. Texas, 128 U. S. 129; Crutcher v. Ky., 141 U. S. 47; Lyng v. Mich., 135 U. S. 161; N. & W. R. R. v. Penna., 136 U. S. 114; Cook v. Penna., 97 U. S. 566; Corson v. Md., 120 U. S. 502; Stoutenburgh v. Hennick, 129 U. S. 141.   (*c*) Or amounts to a discrimination: Welton v. Mo., 91 U. S. 275; Walling v. Mich., 116 U. S. 446; Ward v. Md., 12 Wal. 418: Spraigue v. Thompson, 118 U. S. 90; Webber v. Va., 103 U. S. 344; Sayre Boro. v. Phillips, 1 Adv. R. 596 [s. c., 148 Pa. 482]; Kimmel's Case, 41 Fed. R. 775; Spellman v. New Orleans, 45 Fed. R. 3.   (*d*) Or is a prohibition of a traffic or intercourse recognized as interstate commerce: Crutcher v. Ky., 141 U. S. 47; Gibbons v. Ogden, 9 Wheat. 1; Cooper v. Ferguson, 113 U. S. 727; McAllister's Case, 51 Fed. R. 282; State v. Gooch, 44 Fed. R. 276.

There remains, therefore, the final question, when does this exclusive power of Congress begin and end, and this is best answered by the cases themselves.   It begins when the journey to another state has actually begun: Coe v. Errol, 116 U. S. 517; The Daniel Ball, 10 Wal. 557.   It continues during the journey: Hall v. DeCuir, 95 U. S. 485; R. R. v. Miss., 135 U. S. 587; Gibbons v. Ogden, 9 Wheat. 194.   While the article is in the hands of the railroad or common carrier: Bowman v. Chicago, 125 U. S. 465; Crutcher v. Ky., 141 U. S. 47.   In the hands of the consignee: Brown v. Md., 12 Wheat. 419; Bow-

man v. Chicago etc. Ry., 125 U. S. 465 ; Low v. Austin, 13 Wal. 291 ; Leisey v. Hardin, 135 U. S. 100.    Until sale by the importer: Brown v. Md., 12 Wheat. 419.    On breaking of the original package by the importer: Brown v. Md., 12 Wheat. 419 ; Welton v. Mo., 91 U. S. 275.    Unless Congress has provided otherwise : Rahrer's Case, 140 U. S. 545.

A case identical with the present case was decided in favor of defendant by Judge REED in Com. v. Paul, 48 Leg. Int. 4 ; by Judge NELSON in the circuit court of the United States, State v. Gooch, 44 Fed. R. 276, and by Judge BOND of Maryland, McAllister's Case, 51 Fed. R. 282 ; in which latter case the decision of the Maryland court, cited by appellant, was set aside and the defendant released upon habeas corpus, although in that case defendant had broken the original package for the purpose of permitting the purchaser to inspect the article.    In each of these cases the judgment of the court was based upon Leisey v. Hardin, as decisive on the point.

OPINION BY MR. JUSTICE WILLIAMS, July 19, 1893 :

This case belongs to a rapidly growing class that has already become uncomfortably large and troublesome in this state.    The profits to be derived from an unlawful traffic are much larger than those that flow from legitimate trade, provided the unlawful traffic may be pursued without serious interference from the officers of the law.    Law abiding citizens will not embark in a business that is forbidden by the laws of the state in which they live.    Timid men are afraid to do so.    This kind of operation is left therefore to those who have no respect for law, no interest in the public welfare, and no fear of public opinion. When such men deliberately determine to put money in their pockets by engaging in a business which the state has declared to be injurious to the public morals, the public health, or the public peace, and has therefore forbidden altogether or placed under strict police regulations, they are morally certain to seek immunity for themselves and their unlawful business by immediate flight to the sanctuary of the national constitution, and there laying hold on the horns of the altar of interstate commerce.

The road to this refuge of lawbreakers is well beaten.    There are signboards at every crossing on the route; and the inter-

mediate stations for possible rest wear conspicuous signs of invitation. The travelers over it are generally foreigners to the state whose laws they trample upon, and include a motley assortment of traders.

Beginning with the peripatetic swindlers whose worthless wares are transported in tin trunks which they carry in their hands and who hunt their victims in the secluded villages and along the country roads with an instinct that rarely fails; and running up or down the scale of lawbreakers to the men whose commercial operations extend to the sale of oleomargarine by the pound, and of intoxicating drinks by the pint, there is no man in the procession who is not a conscious and deliberate lawbreaker, and who does not set his possible profits from a forbidden business above his duty to society or the state that protects him. These men seek to pervert a rule of law that has a wide and a beneficial field of operation. They claim to be engaged in interstate commerce, and to be entitled to the protection of the general government as against the police laws of the individual states, for that reason. In support of their claim they will assert that their "goods," whether consisting of oleomargarine, beer, whisky, paste diamonds, pinchbeck watches, or the like, were made on the other side of the state line and imported by or for them; or it may be they will claim to be the agents or factors of the makers; or to have received, and to be engaged in selling "original packages," consisting of a pound of oleomargarine, or a pocket flask of whisky, put up expressly for their trade at the still or factory just "over the line." The mischief done and attempted in this manner, under the guise of interstate commerce, is so great, so open, and so difficult to suppress or punish, that in many states besides this it has become a matter of general and sincere regret that the interstate commerce clause was ever held applicable to trade in any article recognized throughout the civilized world as a proper subject for police regulation and control. We are embarrassed by the difficulties in the way of the enforcement of our police legislation, made in good faith, for the protection of our citizens.

The question involved in this case is therefore one of great practical importance. It is nothing less than whether the police power of the states survives at all, or has been absorbed and extinguished by the interstate commerce clause in the national

constitution.    We recognize the fact that this is a federal question.    It has been the subject of many decisions by the Supreme Court of the United States, and was at one time thought to be well settled in favor of the existence and proper exercise of police powers by the several states.    We entertain that opinion still; but the contrary view has been pressed upon us with so much earnestness in the argument that we feel constrained to examine briefly some of the positions taken by the appellant.

It is said that the recent case of Leisey v. Hardin, 135 U. S. 100, justifies the contention that this state is powerless to interfere with the defendant's traffic.    But Leisey v. Hardin, like all other cases, must be read in the light of its own facts. Leisey was a brewer who made beer in the state of Illinois. Hardin was an officer of the state of Iowa where the law forbade the sale, and the keeping for sale, of any form of intoxicating drink except for sacramental, medical or mechanical purposes.    Leisey shipped from his brewery in Illinois to his agent in Iowa about three hundred casks, and eleven cases of beer, sealed in the ordinary manner.    These were sent there for sale, and were in the hands of Leisey's agent or employer in Iowa for that purpose.    While the entire consignment of beer was yet in the possession of the maker, or his agent, with seals unbroken, it was seized by Hardin under the law of Iowa, and taken out of the possession of Leisey's agent.    An action of replevin was then brought to recover the casks and cases so taken.    Two questions were thus raised.    First, did Leisey own the packages taken from the possession of his agent?    Second, if he was the owner had he a right to have them in his possession in the state of Iowa?    The first question was not controverted.    He was the maker and owner of the packages seized. The second question was one of law and was disposed of upon the interstate commerce clause.    The goods being in original packages with seals unbroken, no sales having been made therefrom, it was held that they were not liable to seizure under the police laws of the state into which they had been brought.

This is the single question involved in that case, and beyond this it is not binding as a precedent upon the court that rendered the judgment, nor upon us.    We shall not question the wisdom of that decision, nor abate one jot from its legal force, though we sincerely regret some of its consequences.    Stand-

ing therefore squarely on the case of Leisey v. Hardin, let us proceed to an examination of the question presented on this record.

The defendant Schollenberger is a citizen and resident of this state. For at least two years he has been living under the protection of its laws, and is bound by all the obligations that such residence and protection impose. He is a merchant, with a store in the city of Philadelphia. He sells his goods to customers, as other merchants sell their goods, from his stock in store, open to their examination. The commodity, or one of the commodities, in which he deals is oleomargarine, for the sale of which at his store in Philadelphia he has obtained a license under the internal revenue laws of the United States during the last two years. He sells, not for shipment in original packages to other countries or other states, but to local customers ; and in the case now before us to an eating house keeper near by, for consumption upon his table as an article of food.

Now our statute explicitly forbids the sale, the keeping, and the offering of oleomargarine for sale, as an article of food. The identical acts forbidden by the law are thus seen to be the acts which he admits he is engaged in, and which he claims the right to do, notwithstanding his residence in, and the statutes of, the state. This right he claims to derive from the interstate commerce clause in two ways. The first of these rests on the nonresidence of the manufacturer. He asserts that the oleomargarine is made in another state. Because the manufacturer can lawfully make and sell under the laws of the state where the manufactory is located, he contends that the manufacturer can sell his own product anywhere ; and for this purpose can establish stores for its sale all over this state, if he chooses to do so. As the manufacturer may do this in person, it is contended that he can do it by an agent, so that he could have as many stores, conducted by as many agents, as there are towns in the commonwealth, and conduct the trade in them all regardless of the police laws of the state. The second line along which he claims to derive immunity is the " original package " doctrine. He says he sells in the packages made up at the factory. He does not divide a roll, a pail or tub of his " goods, " but requires the purchaser to take the entire roll, pail

or tub, made, filled or shaped at the factory.   We think neither of these positions should avail the defendant.

We do not deny that a nonresident manufacturer may sell his goods and ship them to a buyer in the usual trade packages employed in good faith by manufacturers, without being amenable to the police laws of this state therefor.   He may bring them here and hold them in bulk without danger.   So much is fairly ruled in Leisey v. Hardin.   He may sell them to the trade or for shipment to the states in the same unbroken trade packages notwithstanding their unlawful character.   This clearly results from the rule in Leisey v. Hardin.   We might have held, had the question been one for us, that the object of the interstate commerce clause was quite different from what it seems thought to be.   We might have thought it intended to prevent the establishment of state customhouses and taxation along state lines, and to make for the general purposes of legitimate trade all the states open to the manufacturer and merchants of the several states.   But for this the states might have intercepted all goods reaching their borders, and weighed, valued, and taxed them, before permitting them to proceed to their destination.   The destructive effect upon commerce of such restrictions was clearly foreseen and wisely guarded against by our fathers.   But the protection of the lives, the health and morals of citizens was the chief of the duties of government left to the states when the Union was formed.   The common law rights and remedies are to be sought in the courts of the states.   For this reason we would have held that the police regulations of the states stood on impregnable ground and that while no state had the right to tax or to burden interstate commerce, each state had the right to exclude from its territory such articles of food or drink as were injurious in their character and effects upon the health or the morals of the public. But however this may be, it will not be denied that state commerce, that is business conducted within the lines of a state, was left to state control.

It was the intention of the United States to protect the citizens and the productions of one state against unjust discrimination by the other states ; but it was, and is, the duty of the state to protect its citizens against each other.

If then the retail of oleomargarine at the defendant's store is

to be regarded as in any sense his business, as it would seem to be from the form of the licenses attached to the case stated, and from all the facts, he is clearly liable as an individual to the penalty provided by the law which he has broken. Can the facts that the store is the store of the manufacturer, and that he is their agent, relieve him from liability? The sales are not made from the factory nor under the right which the fact of making confers on the maker. On the contrary the sales are made under a store license, granted, not to an establishment located in another state, but to a store in this state. When a nonresident of Pennsylvania comes into the state to embark in business here, his situation is like that of any other resident, and his business done at his store is state, not interstate. It does not matter where he obtains his goods. Interstate commerce does not necessarily depend on the origin of goods; or rather, all men who buy and sell foreign merchandise are not necessarily engaged in interstate commerce. If it was otherwise, all merchants would be superior to state laws, for all deal to some extent in goods made in other states and in other countries. It is not simply or mainly the origin of the goods therefore that is to be considered, but the nature of the business done. One who keeps a stock of goods in store for the inspection of customers, and sells from this stock to actual consumers, is a local dealer. His business is intrastate, not interstate. Our act of 1885 under which this case arises is not a trade regulation. It is a police law. This court has so held repeatedly, and our view of it was expressly affirmed by the Supreme Court of the United States in Powell v. The Commonwealth of Pennsylvania, 127 U. S. 678, a case which turned upon that single question. It does not undertake to deal with an importer from another country or state, but with manufacturers, and dealers within the state. It prohibits the manufacture of oleomargarine within the limits of the state. It also prohibits the sale, the offer to sell, and the having in possession with intent to sell the same " as an article of food." It lays its prohibition on those who are fairly subject to its jurisdiction, and on no others. We have then a valid police law, so declared by the highest tribunal in the land, which prohibits the sale of oleomargarine as an article of food within the state. We have the proprietor of a store located and licensed here, making sales of the prohibited

article to customers for the prohibited purpose. It does not matter that the merchant makes his home in another state, or that he makes his sales by a clerk or agent rather than in person. He is a local dealer selling in violation of the local law and liable to its penalty. If the residence of the dealer could affect the character of his trade then our police laws intended to protect our own people would operate as a discrimination against our citizens and in favor of citizens of other states; and would commit to those having no interests in common with us a most odious monopoly in every form or kind of traffic which our state should attempt to regulate or to suppress.

Intrenched behind the interstate commerce clause so construed, citizens of other states could prey upon our people, trample upon our laws, and make gain out of a traffic forbidden to our citizens, only to be delivered up absolutely and unconditionally to them. It would require only that such citizen of another state should establish a local store in some of our towns or cities, or in all of them, conduct a local business, to meet a local demand, and, when called upon by the officers of the law, make reply that he made the goods in some other state, and, as a manufacturer, supplied himself, as a local dealer, with wares of a foreign origin. Neither the foreign origin of the goods sold, nor of the seller nor both together, will convert a business that is local and intrastate, into one that is general and interstate within the meaning of the constitution of the United States.

But the defendant's second position is that, admitting the views now stated to be correct, he is nevertheless beyond the reach of the state law for another reason, viz.: that his sales are made in original packages and are therefore interstate commerce. We have examined the decisions of the Supreme Court of the United States for a definition of the term "original package." It does not seem however to have received, and perhaps at this time is not capable of, a precise definition that may be applied to it in all cases. The idea for which it stands is however not difficult of apprehension or statement. The methods adopted by manufacturers and importers for packing and preparing goods for transportation by sea or land, differ with the differences in the character, bulk, and material, of the merchandise itself. The general purpose is to adopt that form

and size of package best adapted to the safe and convenient transportation and delivery of the particular class of goods to be moved, because the convenience of the trade will be best subserved thereby. Such packages put up with a view to the convenience and security of transportation and handling, in the regular course of trade, are the original packages of commerce. If we look at the meaning of the words employed we are brought to the same conclusion. Original, means pertaining to the beginning or origin, the first or primitive form of a thing. Package, means a bundle or parcel made up of several smaller parcels combined or bound together in one bale, box, crate or other form of package. An "original package" is such form and size of package as is used by producers or shippers for the purpose of securing both convenience in handling, and security in transportation, of merchandise between dealers in the ordinary course of actual commerce. Such packages are not always made up by putting smaller packages or bundles together, but may include any form of receptacle that shall hold a fixed quantity; as a barrel of sugar, or salt, a bag of coffee, a chest of tea, and the like. The package must not be divided or its unity destroyed. When it is received unbroken from the importer through the custom house, or from the manufacturer by the ordinary channels of transportation, it is within the protection of the interstate commerce doctrine, and the state may not subject it to vexatious delays, appraisement, taxation, or trade restriction. But it has never been held that the importer might subdivide his package and dispose of its several parts in detail. On the contrary in many cases the United States courts have held that upon such subdivision or breaking of bulk, the original package ceased to be such; and the goods became mixed with and indistinguishable from the merchandise already within the state, and therefore subject to state laws. This assigns to each jurisdiction its proper powers. The general government protects the citizens of the several states in the movement of their commodities across state lines for the purpose of commerce. The state regulates the retail trade conducted within its own borders, and forbids the sale of such articles to its citizens as it finds to be injurious to them. We are asked in this case to go a step farther and hold that any package which a manufacturer may choose to put up and send

to himself as a merchant, or to a customer, is necessarily an
" original package," because it was put up by a manufacturer
outside of the state.   We cannot so hold.   This question was
brought to our attention recently by the case of the Common-
wealth v. Zelt et al., 138 Pa. 615.   In that case a distiller
living, or at least making whisky, just over the state line, es-
tablished a store or an agency within the state.   He put up his
" goods " in bottles ranging in capacity from one quart down
to one half pint, and packing them in unsealed barrels sent
them to the Pennsylvania store.   When they reached the agent
the bottles were taken from the barrels, and arranged upon the
shelves and in the windows of the store in the manner usual
in that trade, and sold to customers.   The seller was prosecuted
for the sale of intoxicating liquors without a license, such as
the laws of the state require.   His defence was, the now com-
mon one, that he was engaged in interstate commerce.   His
position was that the bottles sold by him singly to customers
had been filled and corked at the distillery, which was in an-
other state; and that they were the " original packages " put
up by the maker and transported across the line to his store for
sale.   The contention was seriously and earnestly made that
any size or shape of jug or bottle which the distiller might
desire to meet the needs of the retail sale of drink, became,
when filled and shipped by him across a state line, an " original
package " within the meaning of that phrase as used by the
United States courts in the interstate commerce cases.   The
character of the package appears to have been submitted to
the jury, who convicted the defendant.   The defendant ap-
pealed to this court and we said, through PAXSON, Chief Jus-
tice : " Whether a box or a barrel of beer can be separated and
sold in single bottles as original packages will be formally de-
cided when the question squarely arises.   The jury evidently
regarded it as a trick and an evasion of our statute."   The
judgment was accordingly affirmed.   The question which it
was not necessary to decide in Commonwealth v. Zelt, supra,
is fairly involved in this case so far as oleomargarine is con-
cerned.   The case stated concedes that the package was sold
by this defendant for consumption as " an article of food," but
asserts that it was sold in the form in which the maker put it
up at his factory.   It is not said that it was an " original pack-

age " in express words, nor that it was in the form usually adopted in the trade for purposes of transportation. It is reasonable to infer that when the defendant was admitting the sale, and setting up his justification for a violation of the law, he would do this as strongly as the facts would sustain him had he gone into the proof upon a trial before a jury. What the case stated does tell us is that the defendant sold at his store in Philadelphia to one John H. Berry, the keeper of a coffee house at 606 Lombard street, Phila., a package of oleomargarine weighing eighty pounds, made and stamped and branded in Rhode Island, for use as an article of food. This is almost identical with the defence in Commonwealth v. Zelt, which was that the bottles sold by the defendant were put up and shipped in another state, and sold in the same form in which they were received. This does not go far enough. The defendant in this case, as in Zelt's case, was, prima facie, a law breaker. It was incumbent on him to show his right to violate the police laws of the state in which he lived, or carried on his store, affirmatively and clearly. It is not enough to hint or suggest the existence of such a right. It must be set up, and his ability to escape the penalty of the broken law depends on the sufficiency of the justification. The fact alleged as a justification is that the package sold was " made, stamped and branded " in Rhode Island. To enable the defendant to stand on this statement it is necessary for us to go with him to his legal conclusion, viz., Whatever package is put up at a factory outside the state is an " original package " within the meaning of the interstate commerce doctrine. This we distinctly refuse to do. The United States courts have not so held as we understand the cases, and such a conclusion could not be sustained on principle, as the question presents itself to us. The consequences of such a holding are obvious. In this case the owners of the store in Philadelphia are the owners of the factory in another state. As merchants they understand the needs of their retail trade, and the forms and sizes of rolls, tubs, or packages, that will best suit the wants of their customers. As manufacturers they can put their product in packages of such size and shape as shall meet their own needs as merchants. They have both ends of the traffic in their hands and may do, as they undoubtedly are in the habit of doing, whatever their

profits as retailers require them to do as manufacturers.   A jury would be justified in finding in such a case, as the jury found in Zelt's case, that the mode of putting up the package was not adapted to meet the requirements of actual interstate commerce, but the requirements of an unlawful, intrastate retail trade.   In this case the facts are found for us as by the parties.   We are to determine their legal effect.   The defendant is found to have made sales of oleomargarine as an article of food contrary to the provisions of our statute.

It is also found that he made these sales for a nonresident employer.   But the residence or business of the owner, standing alone, is wholly immaterial.   Our law deals with the local trade regardless of the nationality or residence of the trader. It is further found that the sales are made in packages put up by the trader at his factory and sent to his store in this city for sale.   This as we have said does not amount to an assertion that the sales are made in the " original packages " of commerce. If it shows anything upon the subject it shows that they are not so made.

One who plants his feet squarely upon the police laws of this state and defies its officers to suppress or to punish his unlawful trade must show a clear legal right to take and maintain his position as a public enemy, or suffer the penalty of the broken law.

To hold otherwise would make it impossible for the people of any state to protect themselves from evils that by common consent throughout the civilized world need to be restrained and removed by suitable legislation.   It would also strike a blow of absolutely crushing weight at the existence of the police power in the several states, and render all attempts at its exercise ineffectual and useless.

The judgment of the court below is reversed, and judgment is now entered on the case stated in favor of the plaintiff for the sum of one hundred dollars, with the costs of suit.   After judgment is properly entered, let the record be remitted for purposes of execution.