## Commonwealth, Appellant, *v.* J. Otis Paul.

[Marked to be reported.]

*Constitutional law—Interstate commerce—Original package—Oleomargarine.*

A package devised by a nonresident manufacturer, or put up by him, adapted for sale at retail to individual consumers, such for example as a flask of whisky or a tub or pail or roll of oleomargarine, and actually sold by him or his agent to the consumer for use as an article of food or drink, in violation of the laws of the state where such sales take place, is not an " original package" within the meaning of the law relating to interstate commerce; and the punishment of such sales under the police power of the state is not an interference with the powers of congress, or with the commerce between the states which is protected by the constitution of the United States.

*Original package—Question for jury or court.*

The character of the package, whether original or not, is a question of fact for the jury when there are facts to be passed upon bearing upon this question; when the facts are, however, agreed upon, or presented by a special verdict, the question is one of law, and should be decided by the court.

*Original package—Presumption.*

Where a small package is prepared in another state, and brought into this state, and sold at retail, it is fair to presume that the package was intended by him who devised it for the purpose for which he used it in his business.

A small tub of oleomargarine containing ten pounds, prepared in another state and brought into this state to be sold unbroken to a consumer for use as an article of food upon his table, and actually so sold, is not an original package within the meaning of the law relating to interstate commerce.

*Oleomargarine—Federal license—State prohibition.*

The fact that a dealer in oleomargarine has procured a license from the Internal Revenue Department of the United States, authorizing him to deal in oleomargarine, does not authorize him to engage in the manufacture or sale of oleomargarine in violation of the state laws lawfully passed forbidding or regulating such manufacture and sale.

Argued Jan. 18, 1895. Appeal, No. 106, July T., 1894, by plaintiff, from judgment of Q. S. Phila. Co., Oct. T., 1893, No. 370, on special verdict. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Indictment for selling oleomargarine as an article of food. Before HARE, P. J.

The jury found the following special verdict.

"(1) The defendant, J. Otis Paul, is a resident and citizen of the commonwealth of Pennsylvania, and is the duly authorized agent in the city of Philadelphia of Braun & Fitts, of Chicago, Illinois.

"(2) The said Braun & Fitts are engaged in the manufacture of oleomargarine in the said city of Chicago, and the state of Illinois, and as such manufacturers have complied with all the provisions of the act of congress of August 3, 1886, entitled 'An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine.'

"(3) The said defendant, as agent aforesaid, is engaged in business at No. 214 Callowhill street, in the city of Philadelphia, as wholesale dealer in oleomargarine, and was so engaged on the 2d day of October, 1893.

"(4) The said defendant, on the 1st day of July, 1893, paid to the collector of internal revenue of the first district of Pennsylvania the sum of four hundred and eighty dollars, as and for a special tax upon the business, as agent for Braun & Fitts Company, in oleomargarine, and obtained from said collector a writing in the words following:

| "Stamp for | UNITED STATES | Special Tax |
|---|---|---|
| $480 | | $480 |
| Per Year | INTERNAL REVENUE | Per Year |
| No. A 431 | | No. A 431 |

"Received from J. Otis Paul and Geo. E. Paul, agents for the Chicago Butterine Co., the sum of four hundred and eighty dollars, for special tax on the business of wholesale dealer in oleomargarine, to be carried on at 214 Callowhill street, Philadelphia, state of Pennsylvania, for the period represented by the coupon or coupons hereto attached.

        [SEAL.]                    " WILLIAM H. DOYLE,
" $480.                    *Collector First District of Pennsylvania.*
    " Dated at Philadelphia, Pa., July 1st, 1893.

" The following clauses appear on the margin of the above :

" This stamp is simply a receipt for a tax due the government, and does not exempt the holder from any penalty or punishment provided for by the law of any state for carrying on the said business within such state, and does not authorize the commencement nor the continuance of such business contrary to the laws of such state, or in places prohibited by a municipal law.    See section 3243, Revised Statutes U. S.

" Severe penalties are imposed for neglect or refusal to place and keep this stamp conspicuously in your establishment or place of business.    Act of August ?ᵈ. 1886.

"Attached to this were coupons ᴸᵘʳ each month of the year in form as follows :

" Coupon for special tax on wholesale dealer in oleomargarine for October, 1893.

" (5) On or before the said 2d day of October, 1893, the said Braun & Fitts shipped to the said defendant, their agent aforesaid, at their place of business in Philadelphia a package of oleomargarine separate and apart from all other packages, being a tub thereof, containing ten pounds, packed, sealed, marked, stamped and branded in accordance with the requirements of the said act of congress of August 2d, 1886.    The said package was an original package as required by said act, and was of such form, size, and weight as is used by producers or shippers for the purpose of securing both convenience in handling and security in transportation of merchandise between dealers in the ordinary course of actual commerce, and the said form, size, and weight were adopted in good faith and not for the purpose of evading the laws of the commonwealth of Pennsylvania. Said package being one of a number of similar packages forming one consignment shipped by the said company to the said defendant; said packages forming said consignment were unloaded from the cars and placed in defendant's store and there offered for sale as an article of food.

(6) On the said 2d day of October, 1893, in the said city of Philadelphia, at the place of business aforesaid, the said defendant, as wholesale dealer aforesaid, sold to James E. Crawford the said tub or package mentioned in the foregoing paragraph, the oleomargarine therein contained remaining in the original package, being the same package, with seals, marks, stamps, and brands unbroken, in which it was packed by the said man-

ufacturer in the said city of Chicago, Illinois, and thence transported into the city of Philadelphia and delivered by the carrier to the defendant, and the said tub was not broken nor opened on the said premises of the said defendant, and as soon as it was purchased by the said James E. Crawford it was removed from the said premises.

" (7) The oleomargarine contained in said tub was manufactured out of an oleaginous substance not produced from unadulterated milk or cream, and was an article designed to take the place of butter and sold by the defendant to James E. Crawford as an article of food, but the fact that the article was oleomargarine and not butter was made known by the defendant to the purchaser, and there was no attempt or purpose on the part of the defendant to sell the article as butter or any understanding on the part of the purchaser that he was buying anything but oleomargarine, and the said oleomargarine is recognized by the said act of congress of August 2d, 1886, as an article of commerce.

" (8) The above transaction specifically found by the jury is one of many transactions of like character made by the defendant during the last two years."

The court without filing an opinion entered judgment for defendant on the special verdict.

*Error assigned* was entry of judgment as above.

*Carroll R. Williams* and *John G. Johnson, A. Morton Cooper* and *George S. Graham,* district attorney, with them, for appellant.—While congress has the power to regulate commerce under section 8 of article 1 of the constitution, the states may validly " affect " commerce in two ways : (1) In the exercise of their inherent and inalienable police power. (2) Under the taxing power : Munn v. Ill., 94 U. S. 135 ; Gibbons v. Ogdens, 9 Wheat. 1 ; Wilson v. Blackbird Creek Marsh Co., 2 Pet. 245 ; U. S. v. De Witt, 9 Wall. 41 ; Bowman v. Chicago, 125 U. S. 489 ; Robbins v. Shelby Co. Taxing Dist., 120 U. S. 489 ; Morgan Steamship Co. v. Board of Health, 118 U. S. 455 ; Kinmish v. Ball, 129 U. S. 217 ; N. Y. v. Miln, 11 Pet. 102 ; Powell v. Penna., 127 U. S. 678 ; Hennington v. State, 17 S. E. Rep. 1009 ; License Cases, 5 How. 577 ; In re Rahrer, 140 U. S. 545 ; Stone v. Miss., 101 U. S. 814.

The state may validly impose a license tax or fee, and such action is not a regulation of commerce : License Tax Cases, 5 Wall. 462 ; Osborne v. Mobile, 16 Wall. 479 ; Ward v. Maryland, 12 Wall. 418 ; Ficklen v. Shelby Co., 145 U. S. 1 ; Woodruff v. Parham, 8 Wall. 123 ; Ficklen v. Shelby County Tax Dist., 145 U. S. 21 ; License Cases, 5 How. 599 ; Munn v. Ill., 94 U. S. 125 ; Brown v. Houston, 114 U. S. 622 ; Com. v. Zelt, 138 Pa. 628 ; Powell v. Penna., 127 U. S. 678 ; Welton v. Mo., 91 U. S. 277 ; Osborne v. Mobile, 16 Wall. 481 ; Walling v. Mich., 116 U. S. 446 ; Spraigue v. Thompson, 118 U. S. 90.

The manufacture and sale of oleaginous substitutes for butter in the United States cannot be said to be sufficiently " national in its nature " to constitute the substituted article a legitimate subject of interstate commerce ; at least seven states, namely, New Hampshire, Missouri, Minnesota, Massachusetts, New York, New Jersey and Pennsylvania having by statutes prohibited the manufacture and sale of oleaginous substitutes, in imitation of and intended as a substitute for genuine butter : State v. Marshall, 64 N. H. 549 ; State v. Addington, 77 Mo. 110 ; Butler v. Chambers, 36 Minn. 69 ; Mass. v. Plumley, 156 Mass. 236 ; People v. Arensberg, 105 N. Y. 123 ; State v. Newton, 21 Vroom, 534 ; Powell v. Com., 114 Pa. 265 ; McAllister v. State, 72 Md. 390 ; Plumley v. Massachusetts, 155 U. S. 461.

*A. B. Roney* and *Henry R. Edmunds, Richard C. Dale* with them, for appellee.—The judgment should be affirmed upon the authority of Leisy v. Hardin, 135 U. S. 100, and Plumley v. Mass., 155 U. S. 461.

Leisy v. Hardin has been recognized as decisive as to the right of a state to regulate interstate commerce : (1) By congress in the passage of the act of August 8, 1890, commonly known as the Wilson Bill. (2) By the several United Circuit Courts in State v. Gooch, 44 Fed. 276 ; In re McAllister, 51 Fed. 282 ; In re Sanders, 52 Fed. 802 ; In re Ware, 53 Fed. 783. (3) By this court in Com. v. Zelt, 138 Pa. 615 ; Titusville v. Brennan, 143 Pa. 642.

The decision of Leisy v. Hardin has not been modified by the late case of Plumley v. Mass., 155 U. S. 461.

The contention that the police power of the state is superior to the interstate commerce clause of the constitution appears

to be founded upon the decision of this court and that of the United States Supreme Court in Com. v. Powell, 114 Pa. 265, and 127 U. S. 678. In that case no questions of interstate commerce did or could arise, and the only Federal question involved was the bearing of the fourteenth amendment on the case. Under the decision in the late case of Brennan v. Titusville (1893), decided by the United States Supreme Court in 153 U. S. 289, this contention is untenable.

By no straining of the English language can an article designed to take the place of butter, and sold for what it is, be held to be an imitation or adulteration of butter.

The Pennsylvania statute of 1885, in so far as it prohibits the manufacture and sale of any article made in imitation of another article or as an adulteration of a genuine article, is a perfectly valid police regulation whether applied to the sale of domestic articles of commerce or to articles of interstate commerce ; but, in so far as it attempts to prohibit the sale of oleomargarine as oleomargarine, it is unconstitutional and void as a regulation of interstate commerce, when it is sought to apply this prohibition to articles of interstate commerce while yet in the original package of commerce.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895 :

It is not necessary to the decision of this case that we should enter upon the discussion of the existence and extent of the police power residing in the several states of the Union. It is quite unnecessary to argue that the power of congress to regulate commerce between the citizens of the different states was not intended to abridge the lawful exercise of the police power by any of the state governments. If judicial decisions can be said to settle any question, these questions are clearly and properly settled by the decisions of the highest tribunal known to our laws ; and settled in accordance with the rules laid down in this state since its first organization. In Commonwealth v. Powell, 127 U. S. 678, the right of this state to deal, in the exercise of its police power, with the manufacture and sale of oleomargarine, and the validity of the particular statute under consideration in this case were distinctly affirmed. During the last year (1894) a Massachusetts statute relating to the same subject came before the Supreme Court of the U. S. in Plumley

v. Massachusetts, 155 U. S. 461, and was sustained as a lawful exercise of the police power. The defendant in that case, had, as the defendant in this case has, a license from the internal revenue department of the United States authorizing him to deal in oleomargarine. It was held however that this did not authorize him to engage in the manufacture or sale of oleomargarine in violation of the state laws lawfully passed forbidding or regulating such manufacture and sale. The dealer in articles which the state in the exercise of its police power places under restrictions, must make his peace with the state in which his business is conducted as well as with the internal revenue laws of the United States. This proposition the defendant denies. He has made his peace with the tax laws of the United States, but denies the power of the state to regulate or restrict his sales of the commodity in which he deals, and asserts that he is engaged in interstate commerce within the true intent of the constitutional provision conferring upon congress the power to regulate commerce between the several states.

In determining the question thus raised it is important to keep in mind the facts found by the special verdict, as follows: 1. The defendant is a resident in and citizen of this state with a store or place of business at No. 214 Callowhill street, Philadelphia. 2. He is conducting the sale of oleomargarine as the agent for " Chicago Butterine Company," which is a firm or corporation doing business in Illinois and is the licensed dealer at No. 214 Callowhill street. 3. The oleomargarine was not made from milk or cream. It was designed to be used in place of butter. It was sent from Chicago to Philadelphia to be sold as food, and the tub sold to Crawford, which is complained of in this case, was sold to him for use as an article of food. 4. The tub contained ten pounds only, was put up, sealed and stamped at the factory in the state of Illinois, was received in the same form in Philadelphia and then " placed in defendant's store and offered for sale as an article of food." 5. This was one of " many transactions of like character made by the defendant during the last two years; " or in other words, this was the way in which the defendant did business for his nonresident principals, the manufacturers. They put up the article in ten pound packages suited for the retail trade, and because they do not allow their agents to open or divide these, they

treat their trade as wholesale, though in fact they supply the actual consumer and not the retail dealers. Looking now at these facts in the light of the cases cited we shall find every question raised by them has been decided against the defendant, by the Supreme Court of the United States, except one. The validity of our act of assembly has been distinctly affirmed as a lawful exercise of the police power. The fact that an internal revenue license affords the defendant no justification for disregarding a lawful exercise of the police power by the state is stated with equal clearness. The proposition that the judiciary of the United States should not strike down the police power of the states in the exposition of the interstate commerce powers of the general government, was asserted and abundantly vindicated in Plumley v. Massachusetts, supra, decided within the last year. Our statute is directed especially against the sale of oleomargarine as an article of food. The defendant in willful and flagrant disregard of the letter as well as the spirit of the statute, keeps these tubs, of the commodity manufactured by his principals, at the store in Callowhill street for sale "as an article of food." He offers them for sale for use as an article of food, and he sold to Crawford the ten pound tub which is the ground of complaint in this case for use as food. Now it is very clear that this sale was a violation of our statute. The conviction was eminently proper therefore and should be sustained, unless the sale can be justified as one made of an original package within the proper meaning of that phrase. The nonresidence of the manufacturer does not play any important part in this case for he comes into this state to establish a "store" for the sale of his goods, pays the license exacted by the revenue laws, and puts his agent in charge of the sale of his goods from his store, not to the trade, but to customers. We have therefore a Pennsylvania store, selling its stock of goods to its customers for their consumption, from its own shelves ; and unless these goods are in such original packages as the laws of the United States must protect, the sale is clearly punishable under our statute.

We first encountered this question of What shall constitute an original package within the meaning of our national interstate commerce legislation? in Commonwealth v. Zelt, 138 Pa. 615. A nonresident manufacturer of intoxicating drinks put

up his whisky and other liquors in quart and pint bottles
adapted for use in the retail trade to consumers. These he sent
to an agent in charge of a store rented for the purpose in Wash-
ington, Pa., the bottles were corked, some sealing wax put over
the cork, and the brand or initials of the manufacturer impressed
thereon. The bottles so secured were then put in pasteboard
boxes or covers, and packed in open boxes or barrels for ship-
ment to the Pennsylvania store. When they were received at
the store the bottles were arranged and displayed on the shelves
and offered for sale to the consumer as original packages of
whisky. Neither the distiller who shipped the whisky nor his
agent who sold it had a license to sell intoxicating drinks
under the liquor laws of this state, but made sales of whisky
and beer by the pint and quart under the pretense that each
bottle was an original package of commerce. The learned judge
before whom an indictment against the seller of the bottles of
liquor was brought to trial submitted the question to the jury
whether this method of putting up the liquors in bottles was not
adopted as a device to evade the liquor laws of this state. The
jury found the fact to be that it was a mere device, and ren-
dered a verdict of guilty. Upon an appeal to this court the
ruling of the court below was affirmed, and in speaking on the
second assignment of error we said that whether whisky or
beer could be put up in pint bottles and sold by the single bottle
as an original package under the protection of the interstate
commerce laws, was a question that would be decided when it
was squarely raised. The question was next raised in Com-
monwealth v. Shollenberger, 156 Pa. 201, and its decision be-
came necessary to the disposition of that case. In that case a
nonresident manufacturer of oleomargarine had established a
store for its sale in Philadelphia and held a license under the
internal revenue laws authorizing such sale. His agent sold a
tub of 'the goods' to a boarding house keeper for use in the
place of butter on his table.

The defense was that the tub had not been broken or divided
by the seller and was therefore an original package within the
meaning of the interstate commerce cases. We held that the
conclusion did not follow from the fact stated, and attempted
to define an " original package " as such a package as was used
in good faith by producers and shippers for convenience in

handling and security in transportation of their wares in the ordinary course of actual commerce. But we also said that where the size of the package was adapted for the retail trade so that "breaking of bulk" was not necessary to "reduce the goods into the common mass" and fit them for the retail trade, the traffic so conducted was not interstate, but infrastate commerce, or, in other words, the common, every-day, retail traffic of the community in which the store was located. Let us look at the consequences of the adoption of the opposite rule. If a pint bottle of whisky is an original package under the protection of congress, and can be sold as such regardless of the police legislation of the state, we cannot punish the sale to a minor, to a person of known intemperate habits, to a lunatic, on election days, or on the Sabbath. All power over the traffic for police purposes is gone. And why? Because the power to regulate interstate commerce intended to guard against stoppage along state lines for examination or the collection of customs duties, has been extended by construction, until it is made to reach and protect a retail traffic carried on within any state, if the things sold have come into the retailer's store from a non-resident manufacturer or shipper. If this be a sound construction then the power of a state to restrict or prohibit an injurious traffic does not depend on the deleterious character of the thing sold, or the manner in which sales are made, or the public or private injury inflicted by the sale, but on the manner in which the thing sold comes into possession of the seller. If he makes the article, or buys it of another citizen of the state, he cannot sell it without punishment. If he buys it of a nonresident who sends it to him across the state line, he may sell it with impunity, and the state is powerless to stay his hands or to regulate his sales. A pint of whisky put up in a flask, if made or bought in this state, cannot be sold without a license granted by the courts after an examination into the character of the applicant and his business. The same flask of whisky put up across the border may come as an original package into any community and be sold to any person whether a minor, a drunkard, or a lunatic, under the protection of the constitution of the United States.

We cannot adopt a construction that seems to us so unnatural and unreasonable, and that would work such absurd and

monstrous results. On the contrary we hold as we think is held by the recent case of Plumley v. Massachusetts already referred to, that the mere fact that a police law may affect the trade in articles brought from another state does not amount to an attempt to regulate interstate commerce, or to an assumption of power belonging to congress. Coming now to the facts of this case we find the alleged " original package of commerce " to be a small tub of oleomargarine containing ten pounds, and in fact sold to a consumer for use as an article of food upon his table. It is true that the defendant treats his trade as one carried on at wholesale, but the facts of the special verdict show that this is not because he supplies dealers, or sells in large quantities for shipment, but because he treats the little tubs and packages he sells his customers as " original packages of commerce," and his law breaking traffic as " interstate commerce." He does not " break bulk " by taking one pound out of a package and weighing it on his scales for the supply of a customer, but requires him to take a whole tub, whether of ten pounds or of two or of one is immaterial, but it must be a whole package as it was put up at the factory. If the pint bottle or the pound package has not been opened and divided before the sale, the contention is that it has not become a part of " the common mass " of property entering into the ordinary business of the citizens of the state, but is an original package under the protection of congress as interstate commerce. The question to which we are thus brought is the same that was encountered in Commonwealth v. Schollenberger, 156 Pa. 201. It is whether a package intended and used for the supply of the retail trade is an " original package " within the protection of the interstate commerce cases ?

We held in that case that a manufacturer who puts up his products in packages evidently adapted for and intended to meet the requirements of an unlawful retail trade in another state, and sends them to his own agent in that state for sale to consumers, is not engaged in interstate commerce, but is engaged in an effort to carry on a forbidden business by masquerading in a character to which he has no honest title. We are not dealing with the legislative question. Whether the trade in oleomargarine is injurious and should be restricted is a question that has been decided for us. It has been declared injurious.

It has been placed under restrictions.   These restrictions have been held to be a valid exercise of the police power both by this court and the Supreme Court of the United States.   Our question is whether this valid restriction can be enforced, or whether the transparent trick of putting up oleomargine in small packages in another state, so that it can be sold at retail to consumers as an article of food, will clothe an unlawful retail traffic with the coat of mail belonging to honest, legitimate, interstate commerce, and set the police laws of the state at defiance.   In disposing of this question we hold as follows: 1st. The character of the package whether original or not is a question of fact when there are facts to be passed upon bearing upon this question, and should go to the jury.   2d. It is a question of law when the facts are agreed upon, or presented by a special verdict as in this case, and should be decided by the court.   3d. It is fair to presume that a package was intended, by him who devised it, for the purpose for which he uses it in his own business.   4th. A package devised by a nonresident manufacturer, or put up by him adapted for sale at retail to individual consumers, such for example as a flask of whisky or a tub or pail or roll of oleomargarine, and actually sold by him or his agent to the consumer for use as an article of food or drink, in violation of the laws of the state where such sales take place, is not an " original package " within the meaning of the law relating to interstate commerce.   5th. The punishment of such sales under the police power of the state is not an interference with the powers of congress or with the commerce between the states which is protected by the constitution of the United States.

The judgment is reversed and judgment is now entered on the special verdict in favor of the commonwealth.   The record is remitted that sentence may be imposed according to law.