TEXAS & P. RY. CO. v. GATE CITY FERTILIZER CO. (No. 7335.)

(Court of Civil Appeals of Texas. Dallas. May 1, 1915. Rehearing Denied May 29, 1915.)

CARRIERS ☞197 — SALE OF UNCLAIMED FREIGHT—STATUTORY PROVISIONS—"BULK" —"AS CONSIGNED."

Vernon's Sayles' Ann. Civ. St. 1914, art. 725, authorizing a carrier to sell unclaimed freight "offering each box, bale * * * or other article separately as consigned" requires the carrier to offer each box or bale or other article separately unless the freight is consigned in bulk, in which event the sale must be in bulk, and where fertilizer is shipped in bags, each weighing a specified number of pounds, and described in the bill of lading as a specified number of "bags complete fertilizer, weight 26,000 pounds," the carrier selling the same as unclaimed freight cannot sell the same in bulk, but must offer each bag separately; the word "bulk" having reference in law to merchandise which is neither counted, weighed, nor measured, and the words "as consigned" having no other meaning than that the articles to be sold shall be sold in the manner in which consigned as evidenced by the bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. ☞197.

For other definitions, see Words and Phrases, First and Second Series, Bulk.]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by the Gate City Fertilizer Company against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

---

Flippen, Gresham & Freeman, of Dallas, for appellant. Etheridge, McCormick & Bromberg and Charles T. McCormick, all of Dallas, for appellee.

RASBURY, J. Appellee sued appellant to recover $296, the alleged value of 260 bags of fertilizer, charged to have been converted by appellant. Appellant denied conversion and alleged a tender more than once of the fertilizer to the consignee, who refused to accept it, whereupon appellant retained the fertilizer the period of time required by law and then in the manner directed by law for the disposition of unclaimed freight sold same. There was jury trial and upon conclusion of the evidence the county judge instructed verdict for appellee for $296, which was returned and judgment in accordance with verdict rendered. Upon motion for new trial appellee remitted $79.70 of the judgment, being the amount of the freight charges, and the motion was overruled and the judgment made final.

The facts necessary to be related and which are practically undisputed are in effect that the shipment originated at Texarkana, Tex., with Grand Saline, Tex., as its destination, appellee being the consignor and J. E. Thomas consignee, and that the consignee declined to accept same, because appellant had negligently delayed delivery of same beyond the time when there was a demand for fertilizer in the market. After retaining the fertilizer the length of time required by article 725 of Vernon's Sayles' Stats. 1914, and after advertising same for sale in the manner and for the length of time directed in succeeding article 726, appellant sold same at public auction to W. B. Beard for $100.75. Freight, storage, demurrage, advertising, and drayage charges aggregating $84.70, was deducted from the amount realized, and the balance deposited in the treasury of appellant, where it yet remains, subject to appellee's right to claim it under said article 726. The sale was made at the depot of appellant in Grand Saline, to which place appellee consigned the shipment. When the fertilizer was offered for sale the 260 sacks were offered as a whole and not separately sack by sack. The fertilizer was listed in the bill of lading as "260 bags complete fertilizer, weight 26,000" pounds. It also appears by appellee's petition that each bag contained 100 pounds of fertilizer, which was not denied by appellant in its pleading.

The single issue tendered by appellant is, in effect, that the court erred in ruling that the sale by appellant was not a legal sale in that the fertilizer should have been sold, bag at a time, instead of in bulk, and hence the sale being illegal constituted conversion. There is nothing in the record to show that the court actually made such a ruling, but the verdict and judgment can be sustained on no other theory, since the undisputed facts show a compliance with the statutes governing the sale of unclaimed freight in all other respects. Was it necessary in order to constitute a legal sale to offer the fertilizer for sale bag by bag? By article 725, Vernon's Sayles' Tex. Stats. 1914, it is provided:

"When any freight or baggage has been conveyed by a common carrier to any point in this state, and shall remain unclaimed for the space of three months at the office or depot nearest or most convenient to destination, and the owner, whether known or unknown, fails within that time to claim such freight or baggage, or to pay the proper charges if any there be against it, then it shall be lawful for such common carrier to sell such freight or baggage at public auction, offering each box, bale, trunk, valise or other article separately as consigned or checked."

Appellant contends that the reasonable construction to be placed upon said article so far as relates to the manner of auctioning the commodity is that it is to be sold in bulk "in the same manner as the original shipment was made." The proposition would be correct if the fertilizer had in fact been loaded into the car in bulk in the ordinary acceptation of that term. Bulk, as variously defined (Century Dictionary), has reference to "a heap; magnitude of material substance; the greater part"; or as said by Bouvier, has reference, in law, to "merchandise which is neither counted, weighed nor measured." See, also, Standard Oil Co. v. Commonwealth, 119 Ky. 75, 82 S. W. 1020. But the shipment under discussion was not consigned in bulk under either the general or legal definition given. Under the general definition quoted if the fertilizer had been in bulk it would have been loaded in the car in the manner in which coal, gravel, rock, sand or similar commodity is often loaded. Under Bouvier's legal definition it was not loaded in bulk since it was counted, weighed, and measured, in that the bill of lading recited 260 bags weighing 26,000 pounds, and it was alleged and not denied that each sack contained 100 pounds. So much in response to the contention that the fertilizer was in bulk when shipped, but which we believe unimportant in determining the manner of sale for the reason that it is from the statute itself which exactly directs what is to be done that we must determine the matter. The article, as has been seen, provides that it shall be lawful for the carrier to sell after a certain time and after giving the notice required, but that in selling the carrier "shall" offer "each box, bale, trunk, valise or other article separately as consigned or checked." That each box or bale or other article must be offered and sold separately under such provision cannot intelligently be denied, unless the concluding provision "as consigned or checked" evidences some character of limitation upon the plain provisions of the statute. "As consigned" can clearly have no other meaning than that the articles to be sold should be sold just in the manner in which they were consigned as evidenced by the bill of lading. Hence if consigned in bulk the articles should be sold in bulk, but if not consigned in bulk, but in some character of unit, each particular

unit, box, bale, etc., should be offered separately for sale. Such conclusion is reasonable when it is considered that such sale would be most convenient and most profitable for all concerned. When that commodity to be sold is in bulk it would be inconvenient and perhaps expensive, to sell in portions or small quantities, and would ultimately probably fail to realize any greater sum for the article. On the other hand when the commodity is in the shape of a box, bale or other unit, it is convenient for the carrier to so offer it, and in addition it is quite likely that a better price would be secured for the benefit of the consignor. Commercial commodities are usually prepared in the manner most convenient, desirable, and useful to the purchasing public, and it is not improbable that the Legislature had that fact in mind when enacting the statute. In such connection it was said in Commonwealth v. Schollenberger, 156 Pa. 201, 27 Atl. 30, 22 L. R. A. 155, 36 Am. St. Rep. 32:

"The methods adopted * * * for packing and preparing goods for transportation by sea or land differ with the differences in the character, bulk, and material of the merchandise itself. The general purpose is to adopt that form and size of package best adapted to the safe and convenient transportation and delivery of the particular class of goods to be moved, because the convenience of the trade will be best subserved thereby. Such packages, put up with a view to the convenience and security of transportation and handling, in the regular course of trade, are the original packages of commerce."

Such are the reasons which the Legislature had in mind when enacting the law, and it being clear that the bag being the unit adopted by the consignor for the convenience of the trade and purchasing public in preparing fertilizer for sale and transportation, it was the further intention that it should be offered for sale in that manner. And, finally, even if we are in error in our deductions concerning the reasons moving the Legislature to require the sale to be made as provided, it is nevertheless so directed, and in our opinion the words, "as consigned or checked" afford no good reason for placing upon the language of the statute a meaning or construction in radical variance therewith.

Finding no reversible error in the record, the judgment is affirmed.