## Commonwealth *v.* Vandyke.

*Statutes—Oleomargarine act of* 1899 *is constitutional.*

The Act of May 5, 1899, P. L. 241, regulating the manufacture and sale of oleomargarine, butterine, etc., is not in conflict with or in violation of the constitution of the United States, giving to Congress the exclusive power to regulate commerce between the states.

*Oleomargarine—Purport of act of* 1899 *declared.*

The intention of the legislature to be extracted from the act of 1899 is to prohibit the imitation of yellow butter by any admixture or addition to oleomargine during or after manufacture. The legislature may punish the manufacturer or vendor of oleomargarine for adding any color thereto. The effect of the statute is that butter may be colored yellow, but oleomargarine may not be so colored. Oleomargarine legislation reviewed.

Argued March 20, 1900. Appeal, No. 43, Oct. T., 1900, by defendant in a suit of commonwealth of Pennsylvania, by Levi Wells, dairy and food commissioner, against J. K. Vandyke, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1899, No. 226, overruling demurrer to statement. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Per Curiam.

Appeal from judgment of magistrate. Before ARNOLD, P. J.

It appears from the record that the proceeding was instituted by the dairy and food commissioner to recover a penalty of $100 under the provisions of the act of assembly of May 5, 1899, before a magistrate. Judgment having been entered in favor of the commonwealth, an appeal was taken by defendant to the court of common pleas, and to the statement of plaintiff's claim therein a demurrer was filed, which, after argument, the court

subsequently overruled and entered judgment thereon in favor of plaintiff, ARNOLD, P. J., filing the following opinion:

The defendant has been sued for the penalty imposed by the act of May 5, 1899, entitled " An act to regulate the manufacture and sale of oleomargarine, butterine," etc., and in the statement it is alleged that the defendant, as the agent of the Oakdale Manufacturing Company, of Providence, Rhode Island, in the city of Philadelphia, sold in original packages shipped to him by said company, fifty pounds of oleomargarine, " an article, product or compound made wholly or partly out of fat, oil or oleaginous substance or compound thereof not produced from unadulterated milk or cream from the same, without the admixture or addition of any fat foreign to said milk or cream, which was an imitation of yellow butter produced from pure unadulterated milk or cream of the same and containing coloring matter, and was not free from coloration or ingredients that caused it to look like butter, which said coloring matter was the same as used in the coloring of pure butter and was not deleterious to health."   To this statement the defendant has demurred, and for cause of demurrer assigns as reasons that he was engaged in the lawful business of a dealer in oleomargarine under the provisions of the act of congress of August 2, 1886, and that the act of the commonwealth of Pennsylvania of May 5, 1899, is in conflict with and in violation of the constitution of the United States, giving to congress the exclusive power to regulate commerce between the states.

Although the word " butter" when used by itself is commonly understood to mean the oily part of milk or the unctuous substance obtained from cream or milk by churning, yet it is sometimes used to designate other substances resembling butter in consistence or other qualities.   When used in statutes its meaning is generally understood to be the butter obtained by churning cream or milk either by hand or machinery. Sometimes it is called dairy butter and sometimes cream butter.   A substance resembling it is now obtained from the fat of domestic animals, and is called oleomargarine, a new word coined for the purpose.   Sometimes this is called butterine or imitation butter.   Congress has undertaken to give a legal

definition of butter and oleomargarine by the act of August 2, 1886, by which it is enacted that "the word 'butter' shall be understood to mean the food product usually known as butter, and which is made exclusively from milk or cream, or both, with or without any salt or without additional coloring matter;" and that "certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as 'oleomargarine' namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine and neutral; all lard extracts and tallow extracts and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil and annotto, and other coloring matter, intestinal fat and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter." Oleomargarine, it was said in Plumley v. Massachusetts, 156 Mass. 236, has naturally a light yellowish color, and it is the common knowledge of everybody that butter made from cream or milk is also of a light yellow color.

Opposition to the manufacture and sale of oleomargarine, because it comes in competition with butter, thereby reducing the price of the latter, has induced several state legislatures to pass statutes to prevent the manufacture and sale of oleomargarine, but, as it is not deleterious to health and can be made and sold for a less price than dairy or cream butter, it has overcome some of the opposition to it, and now the manufacture and sale of it are authorized by law under regulations which "will advise the consumer of its real character."

Without citing all the statutes and decisions on the subject in this state at length, we content ourselves with a brief summary of the evolution of the law on this subject. The first act appears to have been passed on May 22, 1878, P. L. 87, "to prevent deception in the sale of butter and cheese," and the next on May 24, 1883, P. L. 43, "for the protection of dairymen and to prevent deception in sales of butter and cheese," but these acts proved ineffectual and were superseded by the Act of May 21, 1885, P. L. 22, which prohibited the

manufacture and sale of any oleaginous substance or compound designed to take the place of butter, other than that produced from unadulterated milk or cream. This latter act was held to be constitutional in the case of Powell v. Pennsylvania, 114 Pa. 265, and 127 U. S. 678, so far as it applied to the manufacture as well as sale within the state; but when a case arose on a sale of oleomargarine manufactured outside this state and brought here and sold in the original package, the act of 1885 was held ineffectual to prevent a sale under such circumstances, because it was an interference with the right of congress to regulate commerce between the states: Schollenberger v. Pennsylvania, 171 U. S. 1. Then the Act of May 5, 1899, P. L. 241, was passed which makes it unlawful " to sell any article, product or compound made wholly or partly out of any fat, oil, or oleaginous substance, or compound thereof, not produced from unadulterated milk or cream from the same, without the admixture or addition of any fat foreign to the said milk or cream, and which shall be in imitation of yellow butter, produced from pure, unadulterated milk or cream of the same, with or without coloring matter: Provided, that nothing in this act shall be construed to prohibit the manufacture or sale, or offering or exposing for sale, or having in possession with intent to sell, oleomargarine or butterine or any similar substance, free from coloration or ingredients that cause it to look like butter, and in a separate and distinct form, and in such manner as will advise the consumer of its real character," etc. The act also requires that the tub, package or parcel containing oleomargarine shall be marked and distinguished by a placard with the word " oleomargarine " or " butterine " on it in letters one inch long, and that every print or roll shall be wrapped in wrappers plainly stamped on the outside thereof with the words " oleomargarine " or " butterine," and before being delivered to the purchaser it shall be wrapped in a wrapper plainly stamped on the outside thereof " oleomargarine " or " butterine " without other words.

This act does not intimate how the coloration or ingredients are to be got into the oleomargarine, whether by design or by natural causes, such as chemical changes, nor does the extent or degree of coloration seem to be of any importance. If it has any coloration or ingredients in it which " cause it to look like

butter " its manufacture and sale are unlawful. The act is awkwardly expressed, its sentences are very much involved, and it is difficult to know their application by relation to each other. Perhaps a strict construction of the statute would prohibit the manufacture and sale of oleomargarine in its natural state because it looks like butter, but as the act is intended to repeal the prohibitory statute of 1885, and authorize the manufacture as well as the sale of oleomargarine in this state, we are to give the act such a construction as will afford the relief and prevent the mischief it is intended to prevent. The word coloration means the act or practice of coloring, or the state of being colored, and it is the act or practice of coloring oleomargarine which the act of 1899, is intended to prohibit. The use of the words " admixture or addition " in the statute indicates that the intention of the legislature is to prohibit the imitation of yellow butter by any admixture or addition to oleomargarine during or after manufacture.

The statement in this case concedes that the coloring matter used in the oleomargarine sold by the defendant is not deleterious to health, so that no objection to it exists on that account, but it is alleged that it was " an imitation of yellow butter " and was " not free from coloration or ingredients that caused it to look like butter, which said coloring matter was the same as used in the coloring of pure butter " so that it comes under the ban of the statute.

The Supreme Court of the United States having decided that it is within the power of the legislature of a state to make such prohibition, and that the prohibition is not in conflict with the constitutional grant of power upon congress to regulate commerce between the states, we must follow that authority and decide accordingly. In Plumley v. Massachusetts, 155 U. S. 461, oleomargarine manufactured in Illinois was sold in Massachusetts in violation of a statute of that state prohibiting the sale of any article, product, or compound " which shall be in imitation of yellow butter " provided that the act should not be construed to "prohibit the manufacture or sale of oleomargarine in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter." The Supreme Court held that this statute is not in conflict with the commerce

clause of the constitution of the United States, and sustained a conviction based on a violation of the Massachusetts statute. In a subsequent case, Schollenberger v. Penna., 171 U. S. 1, the same court cited Plumley v. Massachusetts with approbation. The legislature cannot compel the manufacturer or dealer to add any color (as, for instance, pink) to his oleomargarine, as was decided in Collins v. New Hampshire, 171 U. S. 30, but it may punish him for adding any color to his oleomagarine. The statute being enforced in the case before us is in words exactly like the Massachusetts statute; the words " free from coloration or ingredients that cause (oleomargarine) to look like butter" are found in both statutes. The effect of the statute is that butter may be colored yellow but oleomargarine may not be so colored. If it is unlawful to sell deceptive colored oleomargarine in Massachusetts, although it is manufactured in another state, so must it be unlawful to sell it in Pennsylvania under similar circumstances.

The demurrer is overruled and judgment given for the commonwealth for the penalty, $100 and costs.

Defendant appealed.

*Error assigned* was in overruling the demurrer of defendant to plaintiff's statement of claim and in entering judgment therein for the commonwealth for the penalty of $100 and costs.

*R. O. Moon,* for appellant.—The contention of the defendant is that that provision of the act which prohibits the sale in this commonwealth of oleomargarine or butterine, which is an imitation of yellow butter, and which contains coloring matter that causes it to look like butter as applied to the sale in an original package of goods manufactured in another state, and imported into the state of Pennsylvania, is invalid, and in contravention of the constitution of the United States and of the act of congress of May 5, 1886, as interpreted by the Supreme Court of the United States in the case of Schollenberger v. Penna., 171 U. S. 1.

Thus construing the act of congress of August 2, 1886, and the decisions in Schollenberger v. Penna., and Collins v. New Hampshire, courts of high authority have adjudged the statutes of two states, Maryland and Minnesota, similar to the Pennsyl-

vania statute of May 5, 1899, unconstitutional and void, so far
as they prohibit the sale by an agent of a foreign dealer in oleo-
margarine in the original package.

The Maryland statute passed upon by the Supreme Court of
Maryland, in Fox v. State, 43 Atl. Rep. 775, and in Rasch v.
State, 43 Atl. Rep. 931, June, 1899, prohibited the sale, etc., of
" any article manufactured from animal fat or animal or vegeta-
ble oils in imitation or semblance of natural butter."

The Pennsylvania law of May 5, 1899, forbids the sale of oleo-
margarine " which shall be in imitation of yellow butter," but
permits its sale if " free from coloration or ingredients that
cause it to look like butter."    Plumley v. Mass., 155 U. S. 461,
was in all essentials like the present case.

The Schollenberger case decides two questions not raised or
passed upon in the Plumley, or any previous case, viz., that
oleo is a legitimate article of commerce and that a state cannot
prohibit the introduction from another state of pure oleo.

The Collins case decides that a statute although not in terms
absolutely prohibitory, if so in effect is unconstitutional; and
the New Hampshire statute which required the manufacturer
to color oleo pink was declared void with respect to the ques-
tion of interstate commerce.    " In whatever language a statute
may be framed " says the court " its purpose must be deter-
mined by its natural and reasonable effect."

The Pennsylvania law prohibiting coloring matter, and re-
quiring oleo to be white, is in its effect prohibitory.

*Charles E. Bartlett*, with him *Charles L. Brown*, for ap-
pellee.

PER CURIAM, April 30, 1900 :

The question raised by the demurrer in the court below was
whether it is lawful for a person to sell oleomargarine in the
original package brought into this state from another state
" which is an imitation of yellow butter produced from pure
unadulterated milk or cream of the same and containing color-
ing matter, and is not free from coloration or ingredients that
cause it to look like butter, which said coloring matter is the
same as that used in the coloring of pure butter and is not dele-
terious to health."    It is undisputed that this is a violation of

the Act of May 5, 1899, P. L. 241, entitled, " An act to regu-
late the manufacture and sale of oleomargarine and butterine
and other similar products, to prevent fraud and deception by
the manufacture and sale thereof as an imitation of butter," etc.
The defendant's contention is that under the provisions of the
act of congress of August 3, 1886, Supp. to Rev. Stat. U. S. VI,.
p. 505, oleomargarine colored as described in the pleadings in
this case is a lawful article of commerce, and that the act of
May 5, 1899, supra, so far as it relates to such sales, is in conflict
with the provision of the constitution of the United States giving
to congress the exclusive power to regulate commerce among the
several states.   As is clearly shown in the opinion filed in the
court below, this is not in any respect a new question.   The act of
congress and the commerce clause of the United States constitu-
tion as related to an act of a state legislature containing provisions
substantially the same as those contained in the Pennsylvania act
of 1899 came under review in the case of Plumley v. Massachu-
setts, 155 U. S. 461; 156 Mass. 236.   As to the act of congress of
1886 the Supreme Court of the United States held that the taxes
prescribed by that act were imposed for national purposes, and.
their imposition did not give authority to those who paid them.
to engage in the manufacture or sale of oleomargarine in any
state which lawfully forbade such manufacture or sale, or to
disregard any regulations which a state might lawfully prescribe
in reference to that article.   The court further held that whilst.
a lawful article of commerce cannot be wholly excluded from
importation into a state from another state, where it was man-
ufactured or grown, yet a state has power to regulate the intro-
duction of any article, including a food product, so as to insure
the purity of the article imported and to prevent fraud and
deception in the sale thereof; also that the state regulation
under consideration in that case was a valid exercise of this.
power.   This decision directly upon the point under considera-
tion has not been overruled in any later decision of the United
States Supreme Court.   Its authority was expressly recognized
in the case of Schollenberger v. Pennsylvania, 171 U. S. 1, and
was not questioned in the case of Collins v. New Hampshire,.
171 U. S. 30, decided at the same term.   The court below,
therefore, was clearly right in holding that it rules the present
case.   The review of the authorities contained in the opinion

of its learned president renders any further elaboration by us unnecessary.

The judgment is affirmed.