# Commonwealth *v.* McCann.

*Oleomargarine—Statutes—Constitutional law.*

That the Act of May 5, 1891, P. L. 241, regulating the sale of oleomargarine is constitutional has been construed in Com. v. Vandyke, 13 Pa. Superior Ct. 484.

The act is what its title indicates a regulation, not a prohibition of the manufacture and sale of oleomargarine. Such regulation does not conflict with the commerce clause of the national constitution, and it cannot be declared to be an infringement of the rights of the citizen secured by section 1, article 1 of the state constitution, or by the 14th amendment of the national constitution.

Argued April 26, 1900. Appeal, No. 119, April T., 1900, by defendant, in suit of Commonwealth of Pennsylvania for use of Levi Wells, Dairy and Food Commissioner of the Commonwealth of Pennsylvania, against Owen McCann, trading and doing business as McCann & Co., from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1899, No. 271, dismissing exceptions to record of alderman. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed. Opinion by Rice, P. J.

Exceptions to judgment of alderman.

It appears from the record that defendant sold oleomargarine duly marked as such, but that the said article was colored with analyne, not injurious to health, giving the yellow color of butter. Defendant moved to dismiss the case for the reason that the act of May 5, 1899, is unconstitutional. The motion was refused and the alderman thereupon adjudged the appellant guilty of the offense charged in the information, and gave judgment in favor of the commonwealth in the penalty of $100 and costs of inspection and chemical analysis, together with cost of suit. On certiorari defendant filed exceptions to the alderman's record all pertaining to the alleged unconstitutionality of the act of May 5, 1899, and the case was submitted to the court and the exceptions dismissed and the judgment of the alderman affirmed, from which action of the court below defendant appealed.

*Errors assigned* were (1) in affirming the judgment of the alderman for the reason that the act of assembly of May 5, 1899, entitled, " An act to regulate the manufacture and sale of oleomargarine and butterine and other similar products, to prevent fraud and deception in the manufacture and sale thereof as an imitation of butter, the licensing of manufacturers of and dealers in the same, and providing punishment for violations of the act and the means for its enforcement," is unconstitutional, because it is in conflict with article 1, section 1 of the constitution of the state of Pennsylvania, and with section 1 of the 14th amendment of the constitution of the United States. (2) In affirming said judgment as said act of assembly is unconstitutional because the intent and purpose of said act as set forth in its title is not to be found in the body of the act, and if the title is to be read as part of the act it is together inconsistent, purposeless and inoperative, and is in conflict with article 3, section 3 of the constitution of the state of Pennsylvania. (3) In affirming said judgment, because that part of the aforesaid act of assembly prohibiting the sale of oleomargarine or butterine as an imitation of yellow butter, with or without coloring matter, is unconstitutional.

*Simon R. Huss*, for appellant.—The act of May 5, 1899, is an absolute prohibition of the manufacture and sale of oleomargarine, and is, therefore, in conflict with article 1, section 1 of the constitution of Pennsylvania, and section 1 of the fourteenth amendment to the constitution of the United States.

The Supreme Court of the United States has very recently, in Pennsylvania v. Schollenberger, 170 Pa. 284; 171 U. S. 1, settled its character as a legitimate; healthful food product beyond all dispute.

Judge LOCHREN of the United States Circuit Court of Minnesota in In re Brundage, 96 Fed. Repr. 963 on the identical question as that before Judge ARNOLD, pronounced the anticolor law of his state invalid and rests his opinion on the Schollenberger case.

Such sweeping and complete prohibition of the manufacture and sale of all such oleoginous articles cannot be said to be within the police powers of a state, and if not, then the act of May 5, 1899, is unconstitutional. Neither Powell v. Pa., 127

U. S. 678, nor Plumley v. Mass., 155 U. S. 461, are applicable to this case.

It is not within the power of the legislature to make that a fact which is not a fact: Edwards's Appeal, 108 Pa. 283, 290. Its mere declaration to the contrary will not make that a party wall which is not a party wall: Weston v. Arnold, L. R. 8 Ch. App. Cas. 1084.

This act is unconstitutional because the title gives notice of a purpose to regulate and license the manufacture and sale, while the body of the act prohibits the same, and thus violates article 3, section 3 of the constitution of Pennsylvania.

Nothing ambiguous can be said to be clear and this is a decisive answer to the argument that the title is sufficient to lead to an inquiry. An inquiry into a dubious or uncertain thing is not the purpose of the amendment: Union Pass. Ry. Co.'s App. 81* Pa. 91.

The effect and not the purpose of an act determines its validity: Com. v. Lloyd, 2 Pa. Superior Ct. 6.

*James Francis Burke*, for appellee.—The paramount purposes of this act were to promote the sale of oleomargarine as oleomargarine, and to prevent its sale as butter, and for these purposes the legislature provided two distinct restrictions: First, that it should not be given the color or semblance of butter, and second, that the vessel and wrapper in which it was stored and sold should be stamped " Oleomargarine " or " Butterine."

Whether one of these restrictions without the other would prevent the fraud sought to be suppressed is for the legislature and not the offender to determine.

It is not contended that coloring matter renders oleomargarine more palatable or more nutritious to the consumer. It is obvious, therefore, that some other purpose than promoting the public health and subserving the public interest is aimed at in the effort to strike down the law prohibiting its sale when so colored. What can this purpose be ? Manifestly to deceive the public into buying for butter that which is not butter but at best a cheap imitation.

The reasoning advanced by the plaintiff in error in this case, if enforced, would annul the law prohibiting the carrying of

concealed weapons, i. e., it is unconstitutional because unnecessary for the reason that no harm could arise from the practice as the improper use of such weapons is punishable by other statutes. It is the temptation and the danger arising from the carrying of the weapon on the one hand and the coloring of the oleomargarine on the other that the legislature aims to avert.

OPINION BY RICE, P. J., July 26, 1900:

The appellant was adjudged guilty, and a judgment was entered against him by an alderman in a suit for a penalty for selling oleomargarine in imitation of yellow butter contrary to the provisions of the Act of May 5, 1899, P. L. 241. He was legally licensed as provided in that act, and had complied with all the requirements of the act, except that the oleomargarine sold by him was colored yellow by the addition thereto of analyne, a foreign substance but not injurious to health. The only defense he set up on his trial was the unconstitutionality of the act. His exceptions to the record of the alderman on certiorari in the court below, as well as his assignments of error in this court, were all to the same effect.

One of the most important, as well as most familiar, rules for the construction of statutes is, that a legislative intent to violate the constitution is never to be assumed; therefore, wherever a statute is susceptible of two constructions, of which the one would make it unconstitutional, the other constitutional, the latter is to be adopted. Another elementary rule is that construction is to be made of all the parts together, and not of one part only by itself. It is the duty of the courts to take a survey of the entire statute; "for the true meaning of any passage in that which best harmonizes with the subject, and with every other passage of the statute." Another rule to be noticed is that a penal statute must be construed strictly and should not be extended beyond the evident intention of the legislature as expressed on its face. The act of May 5, 1899, needs construction, and in view of the appellant's contention that the construction he puts upon it makes it unconstitutional all these familiar principles are to be kept in mind in determining its true scope and intent. As was said by Judge ARNOLD whose judgment was affirmed in Commonwealth v. Vandyke,

13 Pa. Superior Ct. 484: "The act is awkwardly expressed, its sentences are very much involved, and it is difficult to know their operation by relation to each other. Perhaps a strict construction of the statute would prohibit the manufacture and sale of oleomargarine in its natural state because it looks like butter, but as the act is intended to repeal the prohibitory statute of 1885, P. L. 22, and authorize the manufacture as well as the sale of oleomargarine in the state, we are to give the act such construction as will afford the relief and prevent the mischief it intended to prevent. The word 'coloration' means the act or practice of coloring, or the state of being colored, and it is the act or practice of coloring oleomargarine which the act of 1889 is intended to prohibit. The use of the words 'admixture or addition' in the statute indicates that the intention of the legislature is to prohibit the imitation of yellow butter by any admixture or addition to oleomargarine during or after manufacture." We adopt this as the true construction of the act; and if we are correct in this conclusion none of the constitutional objections that have been urged against it can be sustained. As was said by the Supreme Court of the United States in construing a Massachusetts statute which differs in no essential particular from ours, so it may be said here: "It will be observed that the statute . . . . does not prohibit the manufacture or sale of all oleomargarine, but only such as is colored in imitation of yellow butter produced from pure unadulterated milk or cream of such milk. If free from coloration or ingredient that 'causes it to look like butter' the right to sell it 'in a separate and distinct form in such manner as will advise the consumer of its real character' is neither restricted nor prohibited:" Plumley v. Massachusetts, 155 U. S. 461. It is clearly shown in the opinion of Mr. Justice HARLAN that the statute seeks to suppress false pretenses and to promote fair dealing in the sale of an article of food; to compel the sale of oleomargarine for what it is by preventing its sale for what it is not; to protect unwary purchasers who, without closely scrutinizing the label upon the package in which it is contained, would be induced to buy it as and for butter produced from unadulterated milk or cream from such milk. Such being the scope and intent of the statute the contention that it is an absolute prohibition of the sale and manufacture of oleo-

margarine and that the title gives no notice of such legislation is not well founded. The act is what its title indicates, a regulation, not a prohibition, of the manufacture and sale of oleomargarine. We held in Commonwealth v. Vandyke, supra, following Plumley v. Massachusetts, supra, that such a regulation does not conflict with the commerce clause of the national constitution; and upon the principles recognized in Powell v. Commonwealth, 114 Pa. 265; 127 U. S. 678, Plumley v. Massachusetts and a multitude of other cases, it cannot be declared to be an infringement of the rights of the citizen secured by section 1, article 1 of the state constitution, or by the fourteenth amendment of the national constitution.

The judgment is affirmed.