## Commonwealth *v.* Seiler, Appellant.

*Constitutional law—Police power—Renovated butter.*

The Act of July 10, 1901, P. L. 643, relating to the manufacture and sale of " renovated butter " is a proper exercise of the police power of the state, and is constitutional.

It is not an improper exercise of the police power to require that renovated butter should be labeled, so as to distinguish it from creamery butter.

*Criminal law —Sale of renovated butter—Act of July 10, 1901.*

A dealer in butter who has bought renovated butter as and for creamery butter, believing it to be creamery butter, and sells it as such in good faith, is liable under the act of July 10, 1901, for not having taken out a license. In such a case the intention of the violators of the law is immaterial.

Argued Feb. 10, 1902. Appeal, No. 4, Oct. T., 1902, by defendant, from judgment of C. P. Northumberland Co., Dec. Term, 1901, No. 55, on verdict for plaintiff on case of Commonwealth v. D. G. Seiler. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Indictment for selling renovated butter without a license.

The court charged in part as follows:

[Now, I have been asked by council for the defendant, first in a motion to quash and now again in requests to charge, to hold this act of 1901 unconstitutional. With that question you have nothing whatever to do; the constitutionality of the law is never a matter to be submitted to the jury; it is not the province of jurors to answer requests made to the court to charge, and I do not propose to go into the legal questions involved in this request at length. It is sufficient for you to know that I have concluded that the renovated butter act referred to, the act of 1901, is constitutional. I may take occasion later on, in a certain event, to investigate the matter more fully and may reverse my present ruling. However, that matter will make no difference to you in the performance of such work as is submitted to you by the court with relation to this case. In a general way I may say that the act of 1901 seems to me almost in its provisions—its essential features— identical with the oleomargarine act, about which you have

260, (1902).]        Charge of Court—Arguments.

heard counsel make statements in their arguments to the court, which has been declared by the higher courts constitutional. In this connection, I refuse all the points upon which I have been requested by counsel for the defendant to charge you.] [18]

[It has been contended by the defendant that it was not necessary for him to procure the license mentioned in the act of assemblies unless he intended to deal in renovated butter, and when I first glanced at the act this evening, when that question arose, I rather leaned to that belief myself; but upon a further examination and reading the several provisions of the act, those relating to that question, more carefully, I have come to the conclusion that it is the intention of the act to prevent the sale of renovated butter without a license; that no one has the right to sell renovated butter without having first procured the license, provided by the act, from the proper department, and it makes no difference whether the sales made are intentional or otherwise—whether there is a guilty knowledge or otherwise—because in a statute of this kind prohibiting the sale of a particular article without a license, or without being marked in accordance with the provisions of the act regulating the sale thereof, the question of intention is not a factor in the case.] [19]

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* among others were (18, 19) above instructions, quoting them.

*F. B. Moser*, of *Lark & Moser* and *James Scarlet*, for appellant.

The act of July 10, 1901 is unconstitutional: Fetter v. Wilt, 46 Pa. 457 ; Horstman v. Kaufman, 97 Pa. 147 ; Com. v. Snyder, 182 Pa. 630 ; Sayre Borough v. Phillips, 148 Pa. 482 ; People v. Hawkins, 157 N. Y. 1 ; 51 N. E. Repr. 257 ; People v. Marx, 99 N. Y. 377 ; 2 N. E. Repr. 29.

*Samuel J. M. McCarrel*, with him *Daniel W. Shipman* and *Herbert W. Cummings*, for appellee.—The act is constitutional: Powell v. Com., 114 Pa. 265 ; State v. Addington, 77 Mo. 110 ; Com. v. Vandyke, 13 Pa. Superior Ct. 484 ; Com. v. McCann,

14 Pa. Superior Ct. 221; Com. v. Diefenbacher, 14 Pa. Superior Ct. 264; Com. v. Weiss, 139 Pa. 247; Com. v. Russell, 162 Mass. 520; 39 N. E. Repr. 110; People v. Snowberger, 113 Michigan, 86; 71 N. W. Repr. 497; Com. v. Alger, 7 Cushing, 53; Com. v. Bearse, 132 Mass. 542.

OPINION BY BEAVER, J., April 21, 1902:

The plaintiff was convicted of selling " renovated butter " in violation of the provisions of the Act of July 10, 1901, P. L. 643, in which it is provided: " Section 1. That for the purposes of this act certain food product usually known as ' boiled ' or ' process ' butter, produced by taking original packing stock and other butter and melting the same, so that the butter oil can be drawn off, mixed with milk or skimmed milk or other material and, by emulsion or other process, produce butter, and butter produced by any similar process and commonly known as ' boiled ' or ' process ' butter, and which boiled or process butter, for the purpose of this act, shall be known and designated as 'renovated butter.' " The 2d section provides that persons desiring to engage in the business of manufacturing or selling renovated butter shall make application to the department of agriculture and receive a license therefor; provides for the annual fees to be paid by wholesale and retail dealers and manufacturers respectively and for displaying the license. It is further provided in the act that the dealer shall have a sign in his place of business and shall have each tub, package and parcel containing renovated butter plainly marked, etc. The 7th section provides a civil penalty for the violation of the provisions of the law and the 8th section makes such a violation a misdemeanor punishable by a fine or imprisonment for the first offense and by fine and imprisonment for the second offense.

That legislation of this character is a proper exercise of the police power of the state is no longer an open question. Police power is not a mere phrase. It is a potent reality and embraces within its comprehensive grasp everything relating to the safety, welfare, health and comfort of the people of the commonwealth. In Powell v. Com., 114 Pa. 265, Mr. Justice STERRETT, delivering the opinion of the court, says: " The act of May 21, 1885, is entitled ' An act for the protection of the

public health; and to prevent adulteration of dairy products and fraud in the sale thereof.' It cannot be doubted that the general assembly is invested with full power to legislate for the protection of the public health or to prevent the adulteration of articles of food as well as imposition or fraud in the sale of such articles. In the absence of any constitutional inhibition or limitation, the sovereign power of the state to enact laws for the public good appears to embrace these subjects of legislation; but, however that may be, they come fairly within the police powers of the state. These powers, as described by Judge REDFIELD, in Thorpe v. Rutland, etc., Railroad Co., 27 Vermont, 149, extend 'to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the state . . . . and by which persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the state ; of the perfect right to do which, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.' " In reviewing this case, the United States Supreme Court, in Powell v. Penna., 127 U. S. 678, 8 Sup. Ct. Repr. 992, said: "It is contended that the last statute (May 21, 1885) is void in that it deprives all coming within its provisions of rights of liberty and property without due process of law, and denies to them the equal protection of the laws; rights which are secured by the fourteenth amendment to the constitution of the United States.

"It is scarcely necessary to say that, if this statute is a legitimate exercise of the police power of the state, for the protection of the health of the people and for the prevention of fraud, it is not inconsistent with that amendment, for it is the settled doctrine of this court that, as government is organized for the purpose, among others, of preserving the public health and the public morals, it cannot divest itself of the power to provide for those objects ; and that the fourteenth amendment was not designed to interfere with the exercise of that power by the states." See also Plumley v. Mass., 155 U. S. 461, 15 Sup. Ct. Repr. 154. These general principles have been consistently held in later cases, particularly in reference to the Act of May 5, 1899, P. L. 241, entitled " An act to regulate the manufacture and sale of oleomargarine and butterine and

other similar products, to prevent fraud and deception by the manufacture and sale thereof as an imitation of butter, the licensing of manufacturers of and dealers in the same and providing punishment for violation of the act and the means for its enforcement." In Com. v. Van Dyke, 13 Pa. Superior Ct. 484, it was held that this act was not in conflict with or in violation of the constitution of the United States, giving to congress the exclusive power to regulate commerce between the states    It was held in Com. v. McCann, 14 Pa. Superior Ct. 221, that this act was not in conflict with section 1, article 1 of the state constitution, or of the fourteenth amendment of the national constitution and, in Com. v. Diefenbacher, 14 Pa. Superior Ct. 264, that it did not offend against any provision of the constitution, in that it provides for a penalty for the sale of oleomargarine under certain conditions and also makes the same act a misdemeanor. The penalty recovered in the civil action and the fine and imprisonment imposed in the criminal prosecution are but parts of one punishment.

The oleomargarine act of 1899 is, in many respects, similar to that of 1901, relating to renovated butter, under which the defendant was convicted. The constitutional questions raised by the numerous specifications of error have been in the main disposed of in the cases quoted.

The first question involved, as stated by the defendant, is "Whether a dealer in butter, having bought renovated butter as and for creamery butter, believing it to be creamery butter and selling it as such in good faith, is liable under the act of July 10, 1901, for not having taken out a license, it being his purpose not to engage in the sale of renovated butter and having no intention to deal therein, or take out a license therefor, or to violate the law." Unlike many criminal statutes the act in question does not make the intention of the violator of the law an ingredient in the offense. Whatever the defendant's belief may have been as to the butter which he bought and whatever his intention as to taking out a license or violating the law, the jury has found that he sold renovated butter, without a license and without observing the provisions of the statute in relation to such sale. This is all that is necessary to convict under the act and the instructions of the court, in regard to the belief or intention of the defendant, in view of the

construction of similar statutes in Pennsylvania, was entirely correct.

The defendant's second question, " Whether the act of July 10, 1901, is a proper exercise of the police power in requiring this particular kind of butter to be labeled, it being recognized as a proper article of food," is fully answered by the decisions which we have already cited. Whether the statement of fact contained in this question be true or not, the decisions of our courts fully sustain the power of the legislature to prevent fraud and deception in having one article sold as and for another article from which it differs. Creamery butter is a well known article of commerce. Renovated butter, as described in the act under consideration, is also, it seems, well known. To sell the one for the other is unquestionably a fraud upon the party purchasing. The question of the wholesomeness of the article is not, therefore, involved. In the exercise of the police power, the legislature has the right to pass an act regulating the sale and labeling of renovated butter, so as to prevent fraud and deception in its sale, as it undoubtedly has done by this act. It is not for us to inquire what the results of the provisions of the act may be, so far as relates to the license fees being prohibitory in certain localities, whilst not prohibitory in others. The fixing of the license fees is entirely within the province of the legislature and, if in the administration of the law, they are found to be excessive, the remedy is by modification or repeal.

Without considering the assignments of error in detail, we can see nothing in this act which will distinguish it from the oleomargarine acts of 1885 and 1899, so as to raise any constitutional questions which have not been decided and the decisions of which are not applicable to the questions raised in this record. Upon a consideration of the whole case, we think the defendant was properly convicted.

Judgment affirmed.