# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Commonwealth v. McDermott, Appellant (No. 1).

*Constitutional law—Oleomargarine—Criminal law—Act of May 29, 1901, P. L. 327.*

The Act of May 29, 1901, P. L. 327, entitled, "An act to probibit the manufacture and sale of oleomargarine, butterine and other similar products, when colored in imitation of yellow butter," etc., does not violate any of the provisions of the constitution of the United States or of the state of Pennsylvania.

Where a person is found guilty by a jury of violating the oleomargarine Act of May 29, 1901, P. L. 327, but is not sentenced, the verdict of guilty establishes a conviction within the meaning of the seventh section of the act, and if he commits a second offense and is convicted therefor, he may be sentenced to the penalties imposed by the act for a second conviction.

The conviction spoken of in the act is accomplished by a verdict of guilty, without any judgment or sentence of the court.

Even if the word "conviction" in the act of 1901, is to be construed as including both verdict and sentence, a person may be sentenced to the penalties provided for a second offense, although the indictment for the second offense was returned by the grand jury only on the day immediately following sentence for the first offense.

A count in an indictment under the oleomargarine act of 1901, will not be quashed because the disjunctive "or" is used between the words "oleomargarine" and "butterine".

If there is one count in an indictment which will sustain the sentence, there can be no reversal, although there were other counts which were bad.

Where carrying on a particular business is absolutely forbidden, and the accused is tried for violation thereof it may be shown that at other times than that charged in the indictment he violated the law. Such evidence of other crimes is relevant to show his system of doing business, and the intent present in the act with which he is charged. This rule applies to a violation of the oleomargarine act of May 29, 1901.

Argued April 21, 1906. Appeal, No. 203, April T., 1908, by defendant, from judgment of Q. S. Washington Co., Feb. T., 1908, No. 159, on verdict of guilty in case of Commonwealth v. M. M. McDermott. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for violating the oleomargarine Act of May 29, 1901, P. L. 327.

The opinion of the Superior Court states the case.

The defendant moved to quash the indictment on the ground that the act of 1901, was unconstitutional, and on the ground that the disjunctive "or" had been used in one count between the words oleomargarine and butterine. [1–5]

The court admitted under objection and exception evidence of sales made on January 25, 1908, although the indictment charged sales on December 11, 1907. [6]

The court admitted under exception the record of a former conviction of a violation of the act. [7]

The court imposed as a sentence penalties imposed for a second violation of the act. [16]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–7, 16) various rulings of the court as above.

*Owen C. Underwood,* of *Underwood & Meloy,* with him *Edwin Sutherland,* for appellant, cited as to the meaning of the word "conviction:" Smith v. Com., 14 S. & R. 69; Rauch v. Com., 78 Pa. 490; People v. Butler, 3 Cowen (N. Y.), 347.

*Alex. M. Templeton* and *Cyrus Gordon,* with them *C. L. V. Acheson,* district attorney, for appellee, cited as to the word

"conviction:" Wright v. Donaldson, 158 Pa. 88; York County v. Dalhousen, 45 Pa. 372; Macdonald v. Schroeder, 28 Pa. Superior Ct. 128.

OPINION BY MORRISON, J., July 15, 1908:

The defendant was indicted and convicted in the court of quarter sessions for a second offense in violating the provisions of the Act of May 29, 1901, P. L. 327, entitled: "An act to prohibit the manufacture and sale of oleomargarine, butterine, and other similar products, when colored in imitation of yellow butter; to provide for license fees to be paid by manufacturers, wholesale and retail dealers, and by proprietors of hotels, restaurants, dining rooms and boarding houses; for the manufacture or sale of oleomargarine, butterine, or other similar products, not colored in imitation of yellow butter; and to regulate the manufacture and sale of oleomargarine, butterine, or other similar products, not colored in imitation of yellow butter; and prevent and punish fraud and deception in such manufacture and sale as an imitation butter; and to prescribe penalties and punishment for violations of this act, and the means and the method of procedure for its inforcement, and regulate certain matters of evidence in such procedure."

The learned counsel for the appellant state the questions involved thus: 1. "Is the Act of May 29, 1901, P. L. 327, unconstitutional by reason of the fact that it conflicts with Article 14, section 1, of the Amendments to the Constitution of the United States, which provides in part, 'nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.' "

2. "Is the judgment and sentence of the court a necessary part of a conviction?"

3. "Can a court of Quarter Sessions make its sentence and judgment refer back and have the same force as if entered on the day and at the time of the verdict of the jury?"

4. "If one count of an indictment should have been quashed, and was not, by the court below, and testimony was admitted

substantiating that particular count, is not the jury unlawfully prejudiced thereby against the defendant?"

We may well dispose of the first proposition by saying that the supreme court of the United States, the Supreme Court of Pennsylvania, and the Superior Court of Pennsylvania have many times held that an act of assembly similar to the one in question does not violate the constitution of the United States nor of the state of Pennsylvania. Moreover, some of the decisions expressly decide that the very act of May 29, 1901, is not unconstitutional. As we understand the argument of the learned counsel they are well aware of these decisions but seem to desire to have us enter into a discussion with them as to the correctness of the decisions of the several courts above referred to. This we do not propose to do. It is sufficient for us, as it ought to be for the counsel, to ascertain from the adjudicated cases, what the law is on this subject. It is very clear, we think, that the act of May 29, 1901, is an act intended, not to prohibit the sale of oleomargarine or butterine, but to regulate the sale of the same and to prevent fraud upon the consumers by prohibiting the coloring of the article so that it will resemble yellow butter produced from pure, unadulterated milk, or cream of the same, with or without coloring matter.

In their argument, the learned counsel criticise the opinion and judgment in the case of Commonwealth v. Mellet, 27 Pa. Superior Ct. 41. We have considered their argument and have re-examined that case, and we are not convinced that the opinion and judgment therein needs any alteration or vindication. We are entirely satisfied to follow it in the present case.

The suitor who undertakes to have a law declared unconstitutional takes upon himself the burden of establishing that it is so beyond all reasonable doubt: Pennsylvania Railroad Co. v. Riblet, 66 Pa. 164; Commonwealth ex rel. Wolfe v. Butler, 99 Pa. 535; Commonwealth v. Moir, 199 Pa. 534. The act of 1901, under consideration, and the earlier acts of 1885 and 1889 which the former act supersedes, have been declared over and over again not to be in conflict, as police regulations,

with the state constitution nor with the commerce clause of the national constitution. In Commonwealth v. McCann, 14 Pa. Superior Ct. 221, we held the Act of May 5, 1899, P. L. 241, regulating the sale of oleomargarine, constitutional, referring to Commonwealth v. Vandyke, 13 Pa. Superior Ct. 484. And we further held that such regulation does not conflict with the commerce clause of the national constitution, and it cannot be declared to be an infringement of the rights of the citizen secured by sec. 1, art. 1, of the state constitution, nor by the fourteenth amendment of the national constitution. See also Commonwealth v. Diefenbacher, 14 Pa. Superior Ct. 264. In Commonwealth v. Caulfield, 211 Pa. 644, the Supreme Court, in affirming this court in 27 Pa. Superior Ct. 279, expressly held the Act of May 29, 1901, P. L. 327, constitutional, citing the case of Plumley v. Massachusetts, 155 U. S. 461; see Powell v. Pennsylvania, 127 U. S. 678, affirming the Supreme Court of Pennsylvania; see also Commonwealth v. Paul, 148 Pa. 559; Commonwealth v. Paul, 170 Pa. 284; Commonwealth v. Schollenberger, 156 Pa. 201; and see the same case, 171 U. S. 1. While the latter decision, in part, reverses the Supreme Court of Pennsylvania yet it in no wise denies the power of the state legislature to regulate the sale of an article like oleomargarine by a statute like that of 1901. We close the citation of authorities upon this branch of the case, which might be continued, but it is unnecessary to cite additional authorities, as we are all of the opinion that the act of 1901, is constitutional.

The next question raised is whether it is necessary to have the judgment and sentence of the court pronounced in order to establish a conviction within the meaning of the seventh section of the act of May 29, 1901 (see p. 331), "and upon conviction thereof, shall be punished for the first offense by a fine of not less than $100, nor more than $500, or by imprisonment in the county jail for not more than three months, or both, at the discretion of the court; and upon conviction of any subsequent offense, shall be punished by a fine of not less than $500, nor more than $1,000, and by imprisonment in the county jail for not less than six months nor more than twelve

months." The question here is whether a verdict of guilty, without judgment or sentence, amounts to a conviction within the meaning of the law. It must be conceded that there are cases which seem to hold that to constitute a conviction requires the judgment of the court upon a plea of guilty or a verdict of guilty after trial. But we are inclined to the opinion that under the present statute the conviction spoken of is accomplished by verdict of guilty upon an indictment; that the popular and ordinary significance of the word " conviction " is met by a verdict of guilty or a plea of guilty seems to us beyond question. In our opinion where a defendant has been indicted and tried under the provisions of the act of 1901, and found guilty by a jury and he commits a subsequent offense and is tried and found guilty thereof, he may be punished for the subsequent offense as provided in the last clause of section 7 of the act. Bouviers' Law Dictionary defines conviction to be in practice: "That legal proceeding of record which ascertains the guilt of the party and upon which the sentence or judgment is founded." "Finding a person guilty by verdict of a jury:" 1 Bishop's Crim. Law, sec. 223. "Conviction must precede judgment or sentence:" 1 Caines (N. Y.), 72; 34 Me. 594; 16 Ark. 601; "but is not necessarily or always followed by it:" 14 Pick. (Mass.) 86; 17 Pick. (Mass.) 295; 8 Wend. (N. Y.) 203. Where there is a verdict of guilty, a motion for a new trial heard and refused, and a suspension of sentence, this is a discharge of the defendant from his recognizance and an end of the case. The record of his conviction and the action of the court could be pleaded in bar of a second prosecution for the same offense: Wright v. Donaldson, et al., 158 Pa. 88. " If the jury find the prisoner guilty, he is then said to be convicted of the crime whereof he stands indicted; which conviction may accrue two ways,—either by his confessing the offense and pleading guilty, or by his being found so by the verdict of his country:" 4 Blackstone's Comm., ch. 27. " After trial and conviction, the judgment of the court regularly follows, unless suspended or arrested by some intervening circumstance:" 4 Blackstone's Comm., ch. 28. We regard York County v. Dalhousen et al., 45 Pa. 372, as an authority that

conviction means guilt ascertained by a verdict, confession, or other means than judgment. And Wharton, in his Law Lexicon, defines conviction to be the act of proving guilt of an offense charged against a party by legal tribunal. Commonwealth v. The Commissioners of Philadelphia County, 4 S. & R. 541, is cited, but we understand that case to mean that a person is convicted when he is found guilty; in it there is nothing indicating that a defendant is not convicted until there is a judgment upon the verdict. In Wilmoth v. Hensel, 151 Pa. 200, it was held that a defendant who pleaded guilty to an indictment was convicted. In that case Mr. Chief Justice PAXSON said, as to the word "conviction": "We must regard it as it was probably intended to be used, in its popular sense. In common parlance, a verdict is called a conviction: Smith v. Commonwealth, 14 S. & R. 69.".

Certainly the former conviction of the defendant of a similar offense, laid in the indictment, was a warning to him and ought to have admonished him not to repeat the offense. Having violated the law the second time, with the former verdict of guilty standing against him, we do not think he ought to be now heard to say that there was no former conviction because for some reason the court did not pronounce judgment upon the verdict. But suppose we are wrong in this view of the case; it appears from the record that the court did pronounce judgment on the former conviction on February 10, 1908, and the grand jury did not return the bill against the defendant, under which he was tried in the present case, until February 11, 1908, the day after he was sentenced for the first offense. In our opinion, if the law does require the judgment of the court to establish a conviction, within the meaning of the statute, then this record discloses that such judgment was regularly entered before the defendant was placed in jeopardy, on the indictment in the present case, and, therefore, we are of the opinion that he was lawfully convicted and sentenced for a subsequent offense. The word conviction is used twice in section 7 and it may well be assumed that in both places it means the same thing. In the first instance it is used as follows: "and upon conviction thereof, shall be punished for

the first offense," etc. Now, it is perfectly clear that the legislature here meant conviction by a verdict or plea of guilty; then further along we find "and upon conviction of any subsequent offense, shall be punished," etc. We think the word as used in section 7 should be given the common or popular meaning, to wit: conviction by plea of guilty or by verdict of a jury.

As to the third question we do not consider it necessary to discuss it.

The fourth question is based upon the third count in the indictment. It is contended that the third count ought to have been quashed because the disjunctive "or" was used as follows: "and generally known as oleomargarine or butterine, which said article, product and compound generally known as oleomargarine or butterine," etc. Upon this point the learned court below, in its opinion overruling the motion in arrest of judgment, said: "The second motion in arrest of judgment on the third count, in our opinion, is not well taken, for the reason that the word 'or' as found in the indictment connects words used to describe the same thing. For instance, 'oleomargarine or butterine,' is two ways of describing the same article—the same product, and a description taken as a whole." We are entirely satisfied with this reason. We do not see that the disjunctive "or" is used in the third count in such a way as to mislead the defendant or in any manner embarrass him in his preparation for trial. But in any event, the defendant was not prejudiced or injured by the refusal to quash the third count and by the admission of testimony to support the averments of that count, a stet having been entered and the defendant discharged without day, as to it. It would seem that the stct relieved the defendant from all the consequences of the insertion of that count in the indictment. But the appellant through his counsel claims that he was prejudiced on his trial upon the other counts by reason of its insertion. But we fail to discover how he was so injured. We do not think any testimony was given, solely in support of the third count, which could possibly have influenced the jury to convict the defendant under either or both of the other two counts.

"If there is one count in the indictment which will sustain the sentence, it cannot be reversed:" Commonwealth v. Landis, 13 Pa. Superior Ct. 134; Commonwealth v. Bradley, 16 Pa. Superior Ct. 561; Commonwealth v. Prickett, 132 Pa. 371. In Hutchison v. Commonwealth, 82 Pa. 472, there was an indictment with five counts. There was a motion to quash which was overruled, and the Supreme Court held that the first, third and fourth counts were bad and ought to have been quashed, and that there was no evidence to support the second count. The defendant was convicted of larceny as bailee and the Supreme Court affirmed the judgment because the fifth count was good. We think the appellant has no legal ground of complaint in regard to the third count and the manner in which the court disposed of it.

There is a fifth question raised in the assignments of error and in the argument, but it is not indicated in the statement of the questions involved, and for the latter reason we are not disposed to discuss it at length. The indictment charged the defendant with the unlawful sales on December 11, 1907, and it is argued that evidence was admitted to sustain this charge and also of unlawful sales on January 25, 1908. It cannot be successfully contended, we think, that the commonwealth could not lay the date of the offense as of December 11, 1907, and prove it as of January 25, 1908, because the exact date laid in the indictment as to an offense of the character of the one under consideration is not material. "Where carrying on a particular business is absolutely forbidden, or a license is required, by statute, and the accused is tried for a violation thereof, it may be shown that at other times than that charged in the indictment he violated the law. Such evidence of other crimes is revelant to show his system of doing business and the intent present in the act with which he is charged:" 12 Cyclopedia of L. & P. p. 411, note 28. "Where the offense charged is a continuing offense, evidence of other acts than that charged is admissible, to explain or corroborate the evidence showing the act charged:" 12 Cyclopedia of L. & P. p. 412.

The practice in trials upon indictments charging the sale of intoxicating liquors is a familiar example of allowing evidence

of sales on other days than the one laid in the indictment. In the present case, sentence was imposed on the second count only, was suspended on the first and a stet entered on the third. We are all of the opinion that the defendant was lawfully tried and sentenced and that the record discloses no just ground of complaint.

The assignments of error are all dismissed and the judgment is affirmed, and the record is remitted to the court below, with direction to have the judgment carried into execution.