## Knowles's Estate.

*Jesse S. Shepard,* for appellant.

*Robert M. Boyle, William M. Boenning, Franklin S. Edmonds, J. Warren Brook, Philip S. Moyer* and *Thomas J. Baldrige,* Attorney-General, for Commonwealth.

HENDERSON, J., Feb. 19, 1929.—This is an appeal from the appraisement for, and assessment of, transfer inheritance tax. It was heard on petition and answer, and, hence, the facts are all admitted. The appraisement is conceded, as is the tax of 2 per cent. on lineals under the Act of June 20, 1919,

P. L. 521. The appeal disputes the additional tax of $40,533.59, being the difference between the total Federal credit allowable, 80 per cent., and the normal Pennsylvania tax, which additional tax is imposed under the Act of May 7, 1927, P. L. 859. The appellant contends that this act is unconstitutional, and that question must now be resolved.

It was passed in order to take advantage of section 301 *(b)* of the Federal Revenue Act of 1926, which provides as follows:

"The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy or succession taxes actually paid to any state or territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304."

The Federal tax imposed by the Revenue Act of 1926 is an excise estate tax. In Frick's Estate, 268 U. S. 473, Mr. Justice Van Devanter said: "While the Federal tax is called an estate tax and the state tax is called a transfer tax, both are imposed as excises on the transfer of property from a decedent, and both take effect at the instant of transfer."

It should be noted that this excise is an estate tax; it is a deduction made by the Federal Government from estates for the privilege of transmitting them to one's heirs or legatees. It is the net estate which vests in the heirs, the portion deducted by the imposition of the tax never having been in them. Furthermore, it is a transfer estate excise laid on the estate as a whole and paid primarily by the residuary legatee (see Newton's Estate, 74 Pa. Superior Ct. 361), as distinguished from a transfer legacy excise and payable by each legatee.

The Act of June 20, 1919, P. L. 521, to which the act we are considering is a supplement, imposes a transfer legacy excise payable by each distributee, 2 per cent. if lineal and 10 per cent. on others. Ordinarily, unless residuary, such distributees make no contribution to the Federal estate tax.

For convenience we will quote in full the supplemental Act of 1927:

"A supplement to the Act approved June 20, 1919, P. L. 521, entitled 'An act providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent who was a resident of this Commonwealth at the time of his death, and of property within this Commonwealth of a decedent who was a non-resident of the Commonwealth at the time of his death, and making it unlawful for any corporation of this Commonwealth, or national banking association located therein, to transfer the stock of such corporation or banking association, standing in the name of any such decedent, until the tax on the transfer thereof has been paid, and providing penalties, and citing certain acts for repeal,' imposing additional taxes equal to Federal credits.

"Section 1. Be it enacted, &c., That in order that the Commonwealth may receive the benefit of section 301 *(b)* of the Federal Revenue Act of 1926, or any other legislation of a similar kind or enacted for a like purpose, which grants a credit on the Federal estate tax for inheritance taxes and transfer inheritance taxes paid to the state governments, additional transfer taxes for State purposes are hereby imposed upon the transfer, in trust or otherwise, of any property taxable under the provisions of the transfer inheritance tax law of this Commonwealth, approved June 20, 1919, P. L. 521, entitled 'An act providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent who was a resident of this

Commonwealth at the time of his death, and of property within this Commonwealth of a decedent who was a non-resident of the Commonwealth at the time of his death; and making it unlawful for any corporation of this Commonwealth, or national banking association located therein, to transfer the stock of such corporation or banking association, standing in the name of any such decedent, until the tax on the transfer thereof has been paid, and providing penalties, and citing certain acts for repeal.' Such taxes shall be imposed and be collected, in accordance with the provisions of the transfer inheritance tax laws of the Commonwealth, in the following cases, viz.: Whenever in any estate the total tax paid or payable to the Commonwealth and any other states or territory, at the rates fixed under the inheritance tax laws, shall be less than the total credit allowed by the Federal law for taxes paid to the states, then the tax imposed by this act upon the transfer of such property shall be an amount equal to the difference between the total credit, allowable by the Federal law for taxes payable to the state governments, and the total taxes actually paid or payable to the Commonwealth and any other state or territory under the inheritance tax laws, and the portion of the increased tax so imposed, which shall be chargeable to each of the respective beneficiaries, shall be ascertained by multiplying the total amount of such increase in tax by a 'fraction, the numerator of which shall be the amount actually paid or payable by the respective beneficiary to the Commonwealth and any other state or territory under the said inheritance tax laws, and the denominator of which shall be the total taxes paid by all beneficiaries to the Commonwealth and any other state or territory under the said inheritance tax laws."

It is important to observe that this tax is in addition to that imposed by the Act of 1919, showing thereby that the phrase "total taxes actually paid" means taxes otherwise payable. Such additional tax is imposed in "any estate" upon the transfer of "such property." This wording clearly provides for a transfer *estate* excise, as contradistinguished from a transfer legacy excise. This tax is cut out of the whole estate, and it is the net estate alone which passes to the legatees.

The tax is definitely laid by the earlier clauses in the act, and it is ascertained by deducting the taxes payable under the Act of 1919 from the Federal credit permitted by section 301 *(b)* of the Federal Revenue Act of 1926.

Then follows the last clause of the act apportioning this tax among the respective beneficiaries in proportion to the tax paid by them respectively under the Act of 1919.

There is no notice in the title of the act of this extraordinary provision. It would seem as if the casual legatee should have some notice of the unusual burden attempted to be placed on him.

The clause provides for the apportionment of this tax among "each of the respective beneficiaries." This might mean all the beneficiaries named in the will, or, as contended by counsel for the Commonwealth, in view of the ruling in Newton's Estate, *supra*, only the residuary beneficiaries. In all cases where the residuary estate was small or *nil*, it would be necessary to apportion it among all the legatees in the way directed by the act. In many wills disposing of a large residuary, the same result would follow, as, for instance, one-half to A, and of the other half, $10,000 each to B, C and D, and the balance to E.

We shall illustrate the unequal operation of such a rule. A collateral legatee of $10,000 in a small estate would pay our normal tax of 10 per cent. or $1000; in one of the size of the instant estate he would pay about $2500, and

in a net estate of $8,000,000 he would pay about $5000. Such a method would be confiscatory. It would be measuring a tax by a valuation based on the whole estate and in which the legatee had but a small interest. A legatee should not be asked to pay a varying rate dependent on the size of the whole net estate. That would be taxation run mad. Such a method was upheld in the lower court in Knowlton v. Moore, 178 U. S. 41, 77, and of it the Supreme Court said: "It may be doubted by some, aside from express constitutional restrictions, whether the taxation by Congress of the property of one person, accompanied with an arbitrary provision that the rate of tax shall be· fixed with reference to the sum of the property of another, thus bringing about the profound inequality which we have noticed, would not transcend the limitations arising from those fundamental conceptions of free government which underlie all constitutional systems. On this question, however, in any of its aspects, we do not even intimate an opinion, as no occasion for doing so exists, since, as we understand the law, we are clearly of the opinion that it does not sustain the construction which was placed on it by the court below."

The clause directing the apportionment of this estate excise among all the legatees is incurably bad. Such an arbitrary classification is forbidden by our Constitution. In Schoyer v. Oil Co., 284 Pa. 189, 197, our Supreme Court said: "The·test of classification is whether it produces diversity in results or lack of uniformity in its operation, either on the given subject of tax or the persons affected as payers. There must be a real distinction between the objects with which the law deals for it to be valid. As stated in Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U. S. 150, 155, 'Classification cannot be made arbitrarily. . . . That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis . . . (page 159). Arbitrary selection can never be justified by calling it classification."

Furthermore, the title to this act is defective, in that it contains no notice of this extraordinary provision. Section 3 of article III of our Constitution provides as follows: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in the title."

In Com. v. Martin, 35 Pa. Superior Ct. 241, President Judge Rice said: "The remaining inquiry is as to the sufficiency of the title. We need not stop to show that if an act contain two or more subjects within the meaning of the constitutional prohibition, the fact that these are clearly expressed in the title would not save it; but it has occurred more than once that, although the act could not be said to contain more than one subject, and although the title was sufficient to give notice of the legislation contained in ,some of its provisions, yet, as to other matters, the scope of the act was broader than the title indicated. The general rule applicable to such cases is to sustain the portion of the act of which the title gives notice, if it be in itself a complete and sensible enactment which is capable of being executed, unless it be so linked with the unconstitutional provisions as to lead to the conclusion that the former would not have been adopted by the legislature without the latter." See, also, Dewhurst v. Allegheny, 95 Pa. 437; Com. v. Caulfield, 27 Pa. Superior Ct. 279, 211 Pa. 644; Com. v. Shaleen, 30 Pa. Superior Ct. 1, 215 Pa. 595; and Fox's Appeal, 112 Pa. 337.

It can be said without fear of contradiction that the scope of this act is broader than its title. After imposing the supplemental estate excise, the act

proceeds to apportion it among all the legatees in a way that is truly oppressive. The title contains no notice of this extraordinary provision, and for this reason it must be stricken down.

Can the balance of the act be upheld with this clause eliminated? We are of opinion that we can and should do so if it is self-contained and does not otherwise offend the Constitution.

That it is self-contained we have already pointed out. The imposition of the tax, the rate and method of collection are wholly independent of the apportionment clause.

We shall now examine the other constitutional objections. It is contended that it offends article IX, section 1, of our Constitution, which provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws. . . ."

It is settled that this is an excise tax, and in Knisely v. Cotterel, 196 Pa. 614, it was held that the rule of uniformity did not apply to such taxes and that they might be graduated. See, also, Williamsport v. Wenner, 172 Pa. 173.

It may be conceded that while graduation of such taxes may not be arbitrary, nevertheless they are subject to a reasonable classssification. In Com. v. Delaware Division Canal Co., 123 Pa. 594, it was said: "That classification for the purposes of taxation, as a general rule, is a matter for the legislature; it is the uniformity of taxation according to that classification which is for the courts." This language was quoted with approval in Heisler v. Thomas Colliery Co., 274 Pa. 458. And, at page 620, our Supreme Court, in Com. v. Canal Co., supra, further said: "It may be conceded, however, that classification should be made according to some reasonable, practical rule, drawn from experience, which would prevent a gross inequality in the burdens of taxation. 'It must,' in the language of Mr. Justice Agnew, 'visit all alike in a reasonably practicable way, of which the legislature may judge, but within the just limits of what is taxation.' "

We must now determine, is the classification adopted by the act reasonable, practical and one drawn from experience? It should be pointed out that within the classification it is uniform, every one similarly circumstanced is dealt with practically alike. The logic of human experience is the test to be applied.

The tax is fixed by taking 80 per cent. of the Federal tax less the normal Pennsylvania tax due under the Act of 1919. This means that it is graded as is the Federal estate tax, an exemption of $100,000, then 1 per cent. on the first $50,000, mounting in graded steps till, in the instant estate, it reaches 8 per cent. on the last $300,000. The classification for Federal purposes has been sustained—why not for State taxation? Can we not say of the graded rates that at least, to use an expression arising out of the late war, they are based on the ability to pay. Those rates cannot be regarded as arbitrary or unduly burdensome. The adoption of the Federal classification is obviously germane to the subject-matter. The purpose of the act was to take for Pennsylvania the benefit arising from section 301 (b) of the Federal Reserve Act of 1926. Nothing more need be said justifying the classification. It may be that minor inequalities will arise in the administration of the act, and when they do, an equitable basis for resolving them will be found.

It is claimed that the constitutional mandate as to amending and reviving acts has been violated; suffice it to say that this act is neither a change nor revival, but a supplement to the Act of 1919.

If we have justified the classification, then we have fully answered the contention that the "due process" clause of the Federal Constitution has not been violated. Uniformity of taxation according to the classification made is all that is required: Com. *v.* Quaker City Cab Co., 287 Pa. 161.

In 12 Corpus Juris, 1190, "due process" is thus defined: "As applied to legislative enactments, due process of law means statutes that are general in their operation and that affect the rights of all alike, and not a special act of the legislature, passed to affect the rights of an individual against his will and in a way in which the same rights of other persons are not affected by existing laws."

In Giozza *v.* Tiernan, 148 U. S. 657, it was said: "Nor, in respect to taxation, was the (14th) Amendment intended to compel the state to adopt an iron-clad rule of equality; to prevent the classification of property for taxation at different rates, or to prohibit legislation in that regard, special either in the extent to which it operates or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one as against another of the same class."

And in Duncan *v.* Missouri, 152 U. S. 377, the test of the "due process" guarantee was thus defined: "Due process of law and the equal protection of laws are secured if the laws operate on all alike and do not subject the individual to the arbitrary exercise of the powers of government."

Again, assuming the classification to be germane, it cannot be said that the act is a special law changing the law of succession. It is a general one, indeed. Cope's Estate, 191 Pa. 1, is not in point, in that a tax on property was there involved.

The last point raised against the act is that the legislature has no power to delegate its authority. There is no such delegation. The Federal tax is fixed and this act adopts what it finds. But it is contended the act does not stop there, in that it seeks to take the benefit of "any other legislation of a similar kind or enacted for a like purpose. . . ." Suffice it to say that when such a question arises it will be dealt with.

It has been argued, and with considerable force, that the admitted facts show that these appellants are not injured, in that they will pay the Commonwealth of Pennsylvania the exact sum which otherwise they would be compelled to pay the Federal Government, and, hence, they should not complain, and should not be heard as to any constitutional question under the doctrine of Com. *v.* Haldeman, 88 Pa. Superior Ct. 284, and 288 Pa. 81, and Com. *v.* Alderman, 275 Pa. 483. Having resolved the constitutional questions, it will not be necessary to consider this doctrine.

The appeal is dismissed, the appraisement and imposition of the tax is sustained and the record is remitted to the Register.